CRAVENS V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-04-448-CR

WESLEY LYNN CRAVENS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

A jury convicted Appellant Wesley Lynn Cravens of felony DWI, and the trial court sentenced him to sixty years’ confinement.  In three points, Appellant contends that the trial court erred in failing to submit his requested jury instruction and that his trial counsel rendered ineffective assistance.  We affirm.

II. Background

On February 15, 2004, Clyde Lake, a motorist traveling southbound on I-35W, observed Appellant driving erratically and called 911.  As Lake spoke to the 911 dispatcher, both he and Appellant exited the freeway onto the service road.  Lake observed as Appellant stopped approximately thirty or forty feet short of the stop sign at the intersection, paused for about fifteen to twenty seconds, and then turned left.  Appellant crossed to the opposite side of the highway, turned left onto the northbound service road, and merged into the northbound lanes of I-35W.  Lake followed. 

Appellant pulled over and stopped on the shoulder of the freeway.  Lake also pulled over and stopped approximately 100 to 150 feet behind Appellant. Appellant got out of his car and staggered toward Lake’s vehicle.  Not wanting to confront Appellant, Lake started backing up.  Appellant turned around, walked back to his car, and urinated.  Appellant got back into his car and began driving down the freeway once again.  Lake continued to follow Appellant at a distance of about 100 feet.  

Soon thereafter, Appellant exited the freeway and stopped on the side of the service road.  Lake also exited the freeway and stopped on the service road about 150 feet behind Appellant.  Lake observed as Appellant sat in his car for approximately two or three minutes and then lay over in the seat.  Lake was still on the 911 call and waited for the police to arrive.  

J.E. Collins, an officer with the Fort Worth Police Department, arrived on the scene, finding Appellant lying across the front seat of his car.  Officer Collins tried to wake Appellant, but could not.  Appellant’s car’s motor was still running; therefore, Officer Collins turned it off and took the keys.  Officer Collins testified that Appellant had a beer between his legs; a cardboard box in his backseat floorboard, containing two full beer cans and two quarter-full beer cans; and a plastic bag, containing approximately eight smashed beer cans.  Eventually, Officer Collins was able to wake Appellant and obtain his driver’s license. 

S.A. Smith, another officer with the Fort Worth Police Department, arrived at the scene.  Officer Collins told Officer Smith to watch Appellant while he spoke with Lake.  As Officer Collins was writing down Lake’s information, Appellant started to drive away.
(footnote: 2)  Officer Smith followed Appellant and stopped him about a quarter of a mile down the road.  Officer Collins caught up with them and helped Officer Smith handcuff Appellant.   

Jeff Chase, an officer with the Northlake Police Department, then arrived on the scene.  The three officers decided that Officer Chase would take over the investigation because Appellant had driven into the Northlake jurisdiction. Officer Chase attempted to have Appellant perform several field sobriety tests; however, Appellant did not follow Officer Chase’s instructions and did not complete the tests.  Officer Chase then arrested Appellant for DWI.
(footnote: 3) 

Several times on the way to the jail and in the intoxilyzer room, Appellant asked that a blood sample be drawn; however, Officer Chase denied the request.  Officer Chase requested a breath sample from Appellant, but Appellant adamantly refused.  Thereafter, Appellant lay down on the floor. 

Officer Chase called for a paramedic to examine Appellant.  When Michael Tribble, a paramedic for the Denton County Jail, arrived at the intoxilyzer room, an officer was using an ammonia cap to awaken Appellant.  Appellant complained of chest pain; therefore, Tribble performed a diagnostic assessment on him.  The results were normal except for slight high blood pressure.  An hour later, Tribble reassessed Appellant’s condition.  At that time, Appellant told Tribble that he suffered from several medical problems, including epilepsy. Tribble received orders from a physician to start Appellant on a seizure medication and a high blood pressure medication. 

At trial, Appellant testified that he had not had an alcoholic drink in almost a year and a half and that he had not been drinking on the day he was arrested.  Appellant presented evidence that a seizure caused his actions on that day rather than intoxication.  Dr. Brian Woods, a trauma specialist employed by Parkland Hospital, testified that although he could not conclusively say whether Appellant had a seizure or was intoxicated on that day, from reviewing Appellant’s medical records, it was clear that Appellant’s epilepsy was difficult to manage.  Dr. Woods also stated that many times someone having an epileptic seizure will display symptoms consistent with one who is intoxicated.  Furthermore, Appellant testified that he felt disoriented that day when he had first gotten into his car and that he remembered nothing of what happened until he woke up on the side of the service road and could not find his keys.  Nevertheless, a jury convicted Appellant of felony DWI.
(footnote: 4) 

III. Jury Charge

Appellant’s trial counsel requested that the following jury instruction be submitted to the jury:

If the Defendant was suffering from an epileptic condition . . . at the time and place in question rather than being under the influence of alcohol, he would not be guilty of the offense charged even if he was driving a motor vehicle.  Therefore, if you find from the evidence that on the occasion in question and at the time of Defendant’s arrest he was suffering from an epileptic condition, or if you have a reasonable doubt thereof, you will acquit the Defendant.

The trial court denied the request.  Appellant contends in his first point that the trial court erred in failing to submit his requested jury instruction because “[a] defendant who denies consuming alcohol and explains his suspect actions as being caused by epilepsy is entitled to a charge.”  

Appellate review of error in a jury charge involves a two-step process.  
Abdnor v. State
, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error occurred.  If so, we must then evaluate whether sufficient harm resulted from the error to require reversal.  
Id.
 at 731-32. 

A trial judge’s charge to the jury must set forth “the law applicable to the case.”  
Tex. Code Crim. Proc. Ann.
 art. 36.14 (Vernon Supp. 2005)
; Gray v. State
, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004).  
Courts should also charge on every defensive issue raised by the evidence.  
Boget v. State
, 74 S.W.3d 23, 31 (Tex. Crim. App. 2002).  When evidence raises a defensive issue and the defendant properly requests a jury charge on that issue, the court must submit the issue to the jury.  
Tex. Code Crim. Proc. Ann.
 art. 36.15 (Vernon Supp. 2005); 
Mendoza v. State
, 88 S.W.3d 236, 239 (Tex. Crim. App. 2002).  

Appellant relies on 
Loftin v. State
, 366 S.W.2d 940 (Tex. Crim. App. 1963), to support his argument that the trial judge erred in refusing to submit his requested charge. 
 
In 
Loftin
, a driving while intoxicated case, the appellant denied that he had been drinking, offered explanations for both his physical condition and the smell of alcohol, and
 testified that his condition at the time of his arrest was caused by diabetes rather than intoxication.  
Id
. at 941-42.  The court of criminal appeals reversed the conviction, holding that the evidence that appellant’s condition at the time was caused by diabetes and that he had not used any intoxicants raised an affirmative defense; therefore, he was entitled to the submission of his requested charge that his condition was caused by diabetes.  
Id
. at 942.  

However, we agree with the State’s contention that 
Loftin
’s continued viability is doubtful in light of subsequent decisions by the court of criminal appeals.  
See Solomon v. State
, 49 S.W.3d 356, 368 (Tex. Crim. App. 2001);
 Giesberg v. State
, 984 S.W.2d 245, 250 (Tex. Crim. App. 1998), 
cert. denied
, 525 U.S. 1147 (1999);
 Willis v. State
, 790 S.W.2d 307, 314-15 (Tex. Crim. App. 1990).
  
In 1973, the legislature revised the penal code and specifically listed a number of defenses and affirmative defenses.  
Tex. Penal Code Ann.
 §§ 2.03-.04, 8.01-.06 (Vernon 2003), § 8.07 (Vernon Supp. 2005), §§ 9.01-.63 (Vernon 2003); 
see Giesberg
, 984 S.W.2d at 247-48
.  Furthermore, in 
Giesberg
, 
the court of criminal appeals expressly concluded that because the authority to establish what constitutes a defense rests solely with the legislature, only those defenses recognized by the legislature as either a defense or as an affirmative defense warrant a separate instruction.  
Giesberg
, 984 S.W.2d at 250; 
see also Burkett v. State
, 179 S.W.3d 18, 27 (Tex. App.—San Antonio 2005, no pet.);
 Quattrocchi v. State
, 173 S.W.3d 120, 123 (Tex. App.—Fort Worth 2005, pet. ref’d).

In the penal code, Appellant’s defensive theory, that his actions were caused by an epileptic seizure rather than by intoxication, is not enumerated either as a defense or as an affirmative defense.  
See 
Tex. Penal Code Ann.
 §§ 2.03-.04, 8.01-9.63.  Appellant’s defensive theory goes no further than to merely negate an element of the offense alleged by the State in its indictment, namely, intoxication.  
See Giesberg
, 984 S.W.2d at 250; 
see also Noyola v. State
, No. 07-03-0473-CR, 2004 WL 2867531, at *2 (Tex. App.—Amarillo Dec. 14, 2004, no pet.) (not designated for publication).  As a result, it was sufficiently embraced in the general charge to the jury that the defendant was presumed innocent until he was proven guilty beyond a reasonable doubt.  
See Giesberg
, 984 S.W.2d at 250-51; 
see also Noyola
, 2004 WL 2867531, at *2.
  In fact, inclusion of Appellant’s requested instruction would have been superfluous and would have constituted an impermissible comment on the weight of the evidence.  
See Solomon
, 49 S.W.3d at 368; 
Giesberg
, 984 S.W.2d at 250; 
see also Noyola
, 2004 WL 2867531, at *2. 

We conclude, therefore, that the trial court did not err in denying Appellant’s requested jury instruction. 
 See Giesberg
, 984 S.W.2d at 250 (holding appellant not entitled to a separate jury instruction on his defense of alibi because it involved nothing more than complete negation of his involvement in the commission of the offense and the legislature did not include alibi within the enumerated defenses of the penal code); 
see also Noyola
, 2004 WL 2867531, at *2 (holding appellant not entitled to a separate jury instruction on his “diabetic condition defense” because it merely negates an element of the offense alleged by the State in its indictment and it is not enumerated in the penal code as a defense or affirmative defense); 
cf.
 
Quattrocchi
, 173 S.W.3d at 123 (concluding that because the parental justification defense is a statutory defense recognized by the legislature, an instruction is required if there is some evidence to support it)
.  We overrule Appellant’s first point.  

IV. Ineffective Assistance of Counsel

In his second and third points, Appellant contends that his trial counsel rendered ineffective assistance of counsel by allowing the admission of various otherwise inadmissible prior convictions during the guilt-innocence phase of his trial
 and by allowing the statement, without objection, that he remained silent after being advised of his 
Miranda
 rights.

To establish ineffective assistance of counsel, Appellant must show by a preponderance of the evidence that 
his
 counsel’s representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel’s deficiency, the result of the trial would have been different.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Salinas v. State
, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); 
Mallett v. State
, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001); 
Thompson
 
v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
See Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  Review of counsel’s representation is highly deferential, and the reviewing court indulges a strong presumption that counsel’s conduct fell within a wide range of reasonable representation.  
Salinas
, 163 S.W.3d at 740; 
Mallett
, 65 S.W.3d at 63. 

The second prong of 
Strickland
 requires a showing that counsel’s errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.  
Strickland
, 466 U.S. at 6
87, 104 S. Ct. at 2064.  In other words, Appellant must show there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.  
Id.
 at 694, 104 S. Ct. at 2068. 

A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.  
Thompson
, 9 S.W.3d at 813-14.  “In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel’s actions.”  
Salinas
, 163 S.W.3d at 740 (quoting 
Mallett
, 65 S.W.3d at 63).  To overcome the presumption of reasonable professional assistance, “any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.”  
Salinas
, 163 S.W.3d at 740 (quoting 
Thompson
, 9 S.W.3d at 813).  When the record is silent as to possible trial strategies employed by defense counsel, we will not speculate on the reasons for those strategies.  
See Jackson v. State
, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

1. Admission of Inadmissible Prior Convictions

Appellant complains in his second point that his trial counsel rendered ineffective assistance by allowing the admission of various otherwise inadmissible prior convictions during the guilt-innocence phase of the trial
.
(footnote: 5) 
During his opening statement, Appellant’s counsel stated:

Why wouldn’t the officer take [Appellant] to get a blood test?  Because the officer thought he was just being ornery. . . .  That’s -- that’s the officer’s whole thing.  He’s already made up his mind because they have got computers in the car.  They can tell what your criminal history is.  They can look that stuff up.  And he looks and he finds out that [Appellant] has not one, not two, he’s got six DWI convictions.  He’s got two robbery convictions from when he was 17 and 18.  So he’s made up his mind.  He’s just being ornery, and he’s not going to help him out.  He’s not going to take him -- we -- you would not be sitting here if they had gone . . . to get the blood test . . . .

Furthermore, when Appellant testified, his counsel questioned him about the circumstances of all of his prior convictions.  Appellant’s counsel then questioned him as follows:

Q.  So you have had quite an extensive history in criminal history. Correct?

A.  Yes, sir.

Q.  How many jury trials or bench trials have you been through on all of these charges?

A.  None.

Q.  Why?

A.  Because I have always been guilty.

Q.  Why aren’t you pleading guilty this time?

. . . .

A.  Because I’m not guilty.  

This case demonstrates the “inadequacies inherent in evaluating ineffective assistance claims on direct appeal.”  
Patterson v. State
, 46 S.W.3d 294, 306 (Tex. App.—Fort Worth 2001, no pet.).  Appellant did not file a motion for new trial to afford the trial court the opportunity to hold a hearing and inquire into the reasons for trial counsel’s acts.  Consequently, we cannot determine whether counsel’s actions were grounded in sound trial strategy because the record is silent as to possible trial strategies, and we will not speculate on the reasons for those strategies.  
See
 
Jackson,
 877 S.W.2d at 771; 
Patterson
, 46 S.W.3d at 306.  The record is also silent as to what communications occurred between trial counsel and his client.  
See Strickland
, 466 U.S. at 691, 104 S. Ct. at 2066 (noting that inquiry into counsel’s conversations with defendant may be critical to proper assessment of counsel’s litigation decisions because counsel’s actions are usually based on informed strategic choices made by defendant and on information supplied by defendant).  Therefore, Appellant’s ineffective assistance claims are better raised within the framework of a post-conviction writ of habeas corpus under article 11.07 of the code of criminal procedure.  
Tex. Code Crim. Proc. Ann.
 art. 11.07 (Vernon 2005); 
see Rylander v. State
, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (“[T]he record on direct appeal will generally ‘not be sufficient to show that counsel’s representation was so deficient as to meet the first part of the 
Strickland
 standard’ as ‘[t]he reasonableness of counsel’s choices often involves facts that do not appear in the appellate record.’”); 
see also Bone
 
v. State
, 77 S.W.3d 828, 837 n.30 (Tex. Crim. App. 2002) (“This resolution in no way affects appellant's entitlement to re-urge this or other appropriate constitutional complaints on a writ of habeas corpus.”).  We overrule Appellant’s second point.

2. Failure to Object to Silence After 
Miranda
 Warnings

We must next consider Appellant’s argument that his counsel failed to render effective assistance by allowing the statement, without objection, that Appellant remained silent after being advised of his 
Miranda
 rights.
(footnote: 6)  During the State’s case-in-chief, the prosecutor questioned Officer Chase as follows:

Q.  Okay.  And what is next?  Did you Mirandize the Defendant?

A.  Yes, sir.

. . . .

Q.  Did the Defendant exercise his Miranda warnings?

A.  Yes, sir, he did.

Q.  Chose not to talk?

A.  Yep.

Defense counsel said nothing, nor did the trial court make any comment.

The U.S. Supreme Court has held that the due process requirement of the United States Constitution prohibits the cross-examination of a defendant concerning his silence after he has been arrested and given 
Miranda 
warnings.  
Doyle v. Ohio
, 426 U.S. 610, 619, 96 S. Ct. 2240, 2245 (1976).  The goal is to prevent a jury from drawing inferences of guilt from a defendant’s decision to remain silent after his or her arrest.  
Stroman v. State
, 69 S.W.3d 325, 331 (Tex. App.—Texarkana 2002, pet. ref’d).  The same considerations bar the prosecution from using evidence of such silence as part of its case-in-chief against the defendant.  
Id
.  And under Texas law, the prosecution’s commenting on post-arrest silence, whether before or after the giving of 
Miranda
 warnings, is a violation of an accused’s right to be free from compelled self-incrimination under article I, section 10 of the Texas Constitution.  
Tex. Const.
 art. I, § 10; 
see Sanchez v. State
, 707 S.W.2d 575, 580 (Tex. Crim. App. 1986).

Again, however, the record is silent as to why Appellant’s trial counsel chose not to object to the prosecutor’s questions to Officer Chase.  His trial counsel may have wanted Appellant to appear open and honest with the jury. 
 See Stroman
, 69 S.W.3d at 332
.  Or his trial counsel may have wished to minimize any effect of the testimony on the jury.  
See, e.g.
,
 Abram v. State
, No. 11-02-00368-CR, 2004 WL 42549, at *6 (Tex. App.—Eastland Jan. 8, 2004, no pet.) (not designated for publication) (noting that trial counsel may have wished to minimize any effect on the jury when counsel failed to object to the admission of testimony regarding appellant’s post-arrest silence).  For an undetermined reason, counsel did not object, and only further inquiry may provide the information necessary to make the proper determination whether he provided the effective assistance envisioned under the Sixth Amendment.  
See Thompson
, 9 S.W.3d at 814.
  
Therefore, as previously stated, Appellant’s ineffective assistance claims are better raised through an application for a writ of habeas corpus.  
See 
Tex. Code Crim. Proc. Ann.
 art. 11.07.
  We overrule Appellant’s third point.

V. Conclusion

Having overruled Appellant’s three points on appeal, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: GARDNER, HOLMAN, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  March 9, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Appellant testified that he carried a second set of keys in his pocket. 

3:
Officer Chase testified that he based his arrest of Appellant on the information gathered from the two Fort Worth police officers and his own observations, including the strong odor of alcohol coming from Appellant’s breath as he spoke, his slurred speech, his red, heavy, and watery eyes, and his poor performance on the various field sobriety tests. 

4:
The indictment alleged two prior DWI convictions and an enhancement. 

5:
At trial, Appellant’s counsel allowed the admission into evidence of two convictions for robbery in 1979 and 1980, respectively, a conviction for unlawfully carrying a weapon in 1990, three misdemeanor convictions for DWI in 1992, 1994, and 1997, respectively, and three convictions for DWI and felony repetition in 1999 and 2000.  Appellant apparently does not contend that the three felony convictions for DWI were inadmissible under Rule 609.  
See 
Tex. R. Evid.
 609; 
Lopez v. State
, 990 S.W.2d 770, 778 (Tex. App.—Austin 1999, no pet.) (concluding that appellant’s prior felony convictions for DWI were admissible under Rule 609).  Rather, Appellant argues that the two felony convictions for robbery were inadmissible because they were over ten years old and that the misdemeanor convictions were inadmissible because they were not offenses involving moral turpitude. 

6:
See Miranda v. Arizona
, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 1630 (1966).