COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-04-448-CR

 

 

WESLEY LYNN CRAVENS                                                     APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 211TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.      Introduction

A jury convicted Appellant
Wesley Lynn Cravens of felony DWI, and the trial court sentenced him to sixty
years= confinement.  In three points,
Appellant contends that the trial court erred in failing to submit his requested
jury instruction and that his trial counsel rendered ineffective
assistance.  We affirm.








II.     Background

On February 15, 2004, Clyde
Lake, a motorist traveling southbound on I-35W, observed Appellant driving
erratically and called 911.  As Lake
spoke to the 911 dispatcher, both he and Appellant exited the freeway onto the
service road.  Lake observed as Appellant
stopped approximately thirty or forty feet short of the stop sign at the
intersection, paused for about fifteen to twenty seconds, and then turned
left.  Appellant crossed to the opposite
side of the highway, turned left onto the northbound service road, and merged
into the northbound lanes of I-35W.  Lake
followed. 

Appellant pulled over and
stopped on the shoulder of the freeway. 
Lake also pulled over and stopped approximately 100 to 150 feet behind
Appellant. Appellant got out of his car and staggered toward Lake=s vehicle.  Not wanting to
confront Appellant, Lake started backing up. 
Appellant turned around, walked back to his car, and urinated.  Appellant got back into his car and began
driving down the freeway once again. 
Lake continued to follow Appellant at a distance of about 100 feet.  








Soon thereafter, Appellant
exited the freeway and stopped on the side of the service road.  Lake also exited the freeway and stopped on
the service road about 150 feet behind Appellant.  Lake observed as Appellant sat in his car for
approximately two or three minutes and then lay over in the seat.  Lake was still on the 911 call and waited for
the police to arrive.  

J.E. Collins, an officer with
the Fort Worth Police Department, arrived on the scene, finding Appellant lying
across the front seat of his car. 
Officer Collins tried to wake Appellant, but could not.  Appellant=s car=s motor was
still running; therefore, Officer Collins turned it off and took the keys.  Officer Collins testified that Appellant had
a beer between his legs; a cardboard box in his backseat floorboard, containing
two full beer cans and two quarter-full beer cans; and a plastic bag,
containing approximately eight smashed beer cans.  Eventually, Officer Collins was able to wake
Appellant and obtain his driver=s license. 

S.A. Smith, another officer
with the Fort Worth Police Department, arrived at the scene.  Officer Collins told Officer Smith to watch
Appellant while he spoke with Lake.  As
Officer Collins was writing down Lake=s information, Appellant started to drive away.[2]  Officer Smith followed Appellant and stopped
him about a quarter of a mile down the road. 
Officer Collins caught up with them and helped Officer Smith handcuff
Appellant.   








Jeff Chase, an officer with
the Northlake Police Department, then arrived on the scene.  The three officers decided that Officer Chase
would take over the investigation because Appellant had driven into the
Northlake jurisdiction. Officer Chase attempted to have Appellant perform
several field sobriety tests; however, Appellant did not follow Officer Chase=s instructions and did not complete the tests.  Officer Chase then arrested Appellant for
DWI.[3]


Several times on the way to
the jail and in the intoxilyzer room, Appellant asked that a blood sample be
drawn; however, Officer Chase denied the request.  Officer Chase requested a breath sample from
Appellant, but Appellant adamantly refused. 
Thereafter, Appellant lay down on the floor. 








Officer Chase called for a
paramedic to examine Appellant.  When
Michael Tribble, a paramedic for the Denton County Jail, arrived at the
intoxilyzer room, an officer was using an ammonia cap to awaken Appellant.  Appellant complained of chest pain;
therefore, Tribble performed a diagnostic assessment on him.  The results were normal except for slight
high blood pressure.  An hour later,
Tribble reassessed Appellant=s condition.  At that time,
Appellant told Tribble that he suffered from several medical problems,
including epilepsy. Tribble received orders from a physician to start Appellant
on a seizure medication and a high blood pressure medication. 

At trial, Appellant testified
that he had not had an alcoholic drink in almost a year and a half and that he
had not been drinking on the day he was arrested.  Appellant presented evidence that a seizure
caused his actions on that day rather than intoxication.  Dr. Brian Woods, a trauma specialist employed
by Parkland Hospital, testified that although he could not conclusively say
whether Appellant had a seizure or was intoxicated on that day, from reviewing
Appellant=s medical
records, it was clear that Appellant=s epilepsy was difficult to manage. 
Dr. Woods also stated that many times someone having an epileptic
seizure will display symptoms consistent with one who is intoxicated.  Furthermore, Appellant testified that he felt
disoriented that day when he had first gotten into his car and that he
remembered nothing of what happened until he woke up on the side of the service
road and could not find his keys. 
Nevertheless, a jury convicted Appellant of felony DWI.[4]


 

 








III.     Jury
Charge

Appellant=s trial counsel requested that the following jury instruction be
submitted to the jury:

If the
Defendant was suffering from an epileptic condition . . . at the time and place
in question rather than being under the influence of alcohol, he would not be
guilty of the offense charged even if he was driving a motor vehicle.  Therefore, if you find from the evidence that
on the occasion in question and at the time of Defendant=s arrest he was suffering from an epileptic condition, or if you have
a reasonable doubt thereof, you will acquit the Defendant.

The trial court denied the
request.  Appellant contends in his first
point that the trial court erred in failing to submit his requested jury
instruction because A[a]
defendant who denies consuming alcohol and explains his suspect actions as
being caused by epilepsy is entitled to a charge.@  

Appellate
review of error in a jury charge involves a two-step process.  Abdnor v. State, 871 S.W.2d 726, 731
(Tex. Crim. App. 1994).  Initially, we
must determine whether error occurred. 
If so, we must then evaluate whether sufficient harm resulted from the
error to require reversal.  Id. at
731-32. 








A trial
judge=s charge to the jury must set forth Athe law applicable to the case.@  Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2005);
Gray v. State, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004).  Courts should also charge on every defensive
issue raised by the evidence.  Boget
v. State, 74 S.W.3d 23, 31 (Tex. Crim. App. 2002).  When evidence raises a defensive issue and
the defendant properly requests a jury charge on that issue, the court must
submit the issue to the jury.  Tex. Code Crim. Proc. Ann. art. 36.15
(Vernon Supp. 2005); Mendoza v. State, 88 S.W.3d 236, 239 (Tex. Crim.
App. 2002).  

Appellant
relies on Loftin v. State, 366 S.W.2d 940 (Tex. Crim. App. 1963), to
support his argument that the trial judge erred in refusing to submit his
requested charge.  In Loftin,
a driving while intoxicated case, the appellant denied that he had been
drinking, offered explanations for both his physical condition and the smell of
alcohol, and testified that his condition at the time of his arrest was caused
by diabetes rather than intoxication.  Id.
at 941-42.  The court of criminal appeals
reversed the conviction, holding that the evidence that appellant=s condition at the time was caused by diabetes and that he had not
used any intoxicants raised an affirmative defense; therefore, he was entitled
to the submission of his requested charge that his condition was caused by
diabetes.  Id. at 942.  








However, we
agree with the State=s contention
that Loftin=s continued
viability is doubtful in light of subsequent decisions by the court of criminal
appeals.  See Solomon v. State, 49
S.W.3d 356, 368 (Tex. Crim. App. 2001); Giesberg v. State, 984 S.W.2d
245, 250 (Tex. Crim. App. 1998), cert. denied, 525 U.S. 1147 (1999);
Willis v. State, 790 S.W.2d 307, 314-15 (Tex. Crim. App. 1990).  In 1973, the legislature revised the
penal code and specifically listed a number of defenses and affirmative
defenses.  Tex. Penal Code Ann. '' 2.03-.04, 8.01-.06 (Vernon 2003), ' 8.07 (Vernon Supp. 2005), '' 9.01-.63 (Vernon 2003); see Giesberg, 984 S.W.2d at
247-48.  Furthermore, in Giesberg,
the court of criminal appeals expressly concluded that because the authority to
establish what constitutes a defense rests solely with the legislature, only
those defenses recognized by the legislature as either a defense or as an
affirmative defense warrant a separate instruction.  Giesberg, 984 S.W.2d at 250; see
also Burkett v. State, 179 S.W.3d 18, 27 (Tex. App.CSan Antonio 2005, no pet.); Quattrocchi v. State, 173 S.W.3d
120, 123 (Tex. App.CFort Worth 2005,
pet. ref=d).








In the penal
code, Appellant=s defensive
theory, that his actions were caused by an epileptic seizure rather than by
intoxication, is not enumerated either as a defense or as an affirmative
defense.  See Tex. Penal Code Ann. '' 2.03-.04, 8.01-9.63.  Appellant=s defensive theory goes no further than to merely negate an element of
the offense alleged by the State in its indictment, namely, intoxication.  See Giesberg, 984 S.W.2d at 250; see
also Noyola v. State, No. 07-03-0473-CR, 2004 WL 2867531, at *2 (Tex. App.CAmarillo Dec. 14, 2004, no pet.) (not designated for
publication).  As a result, it was
sufficiently embraced in the general charge to the jury that the defendant was
presumed innocent until he was proven guilty beyond a reasonable doubt.  See Giesberg, 984 S.W.2d at 250-51; see
also Noyola, 2004 WL 2867531, at *2. 
In fact, inclusion of Appellant=s requested instruction would have been superfluous and would have
constituted an impermissible comment on the weight of the evidence.  See Solomon, 49 S.W.3d at 368; Giesberg,
984 S.W.2d at 250; see also Noyola, 2004 WL 2867531, at *2. 

We conclude,
therefore, that the trial court did not err in denying Appellant=s requested jury instruction.  See Giesberg, 984 S.W.2d at 250 (holding
appellant not entitled to a separate jury instruction on his defense of alibi
because it involved nothing more than complete negation of his involvement in
the commission of the offense and the legislature did not include alibi within
the enumerated defenses of the penal code); see also Noyola, 2004 WL
2867531, at *2 (holding appellant not entitled to a separate jury instruction
on his Adiabetic condition defense@ because it merely negates an element of the offense alleged by the
State in its indictment and it is not enumerated in the penal code as a defense
or affirmative defense); cf. Quattrocchi, 173 S.W.3d at 123
(concluding that because the parental justification defense is a statutory
defense recognized by the legislature, an instruction is required if there is
some evidence to support it).  We
overrule Appellant=s first
point.  








IV.    Ineffective
Assistance of Counsel

In his
second and third points, Appellant contends that his trial counsel rendered
ineffective assistance of counsel by allowing the admission of various
otherwise inadmissible prior convictions during the guilt-innocence phase of
his trial and by allowing the statement, without objection, that he remained
silent after being advised of his Miranda rights.

To establish
ineffective assistance of counsel, Appellant must show by a preponderance of
the evidence that his counsel=s representation fell below the standard of prevailing professional
norms and that there is a reasonable probability that, but for counsel=s deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62-63
(Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999).  








In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each
case.  Thompson, 9 S.W.3d at
813.  The issue is whether counsel=s assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688-89,
104 S. Ct. at 2065.  Review of counsel=s representation is highly deferential, and the reviewing court
indulges a strong presumption that counsel=s conduct fell within a wide range of reasonable representation.  Salinas, 163 S.W.3d at 740; Mallett,
65 S.W.3d at 63. 

The second
prong of Strickland requires a showing that counsel=s errors were so serious that they deprived the defendant of a fair
trial, i.e., a trial whose result is reliable. 
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.  In other words, Appellant must show there is
a reasonable probability that, but for counsel=s unprofessional errors, the result of the proceeding would have been
different.  Id. at 694, 104 S. Ct.
at 2068. 








A reviewing
court will rarely be in a position on direct appeal to fairly evaluate the
merits of an ineffective assistance claim. 
Thompson, 9 S.W.3d at 813-14. 
AIn the majority of cases, the record on direct appeal is undeveloped
and cannot adequately reflect the motives behind trial counsel=s actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged
ineffectiveness.@  Salinas, 163 S.W.3d at 740 (quoting Thompson,
9 S.W.3d at 813).  When the record is
silent as to possible trial strategies employed by defense counsel, we will not
speculate on the reasons for those strategies. 
See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

1.     Admission of Inadmissible
Prior Convictions

Appellant
complains in his second point that his trial counsel rendered ineffective
assistance by allowing the admission of various otherwise inadmissible prior
convictions during the guilt-innocence phase of the trial.[5] During his opening statement,
Appellant=s counsel
stated:

Why wouldn=t the
officer take [Appellant] to get a blood test? 
Because the officer thought he was just being ornery. . . .  That=s -- that=s the
officer=s
whole thing.  He=s
already made up his mind because they have got computers in the car.  They can tell what your criminal history
is.  They can look that stuff up.  And he looks and he finds out that
[Appellant] has not one, not two, he=s got six DWI
convictions.  He=s got
two robbery convictions from when he was 17 and 18.  So he=s made up his mind.  He=s just being ornery, and he=s not
going to help him out.  He=s not
going to take him -- we -- you would not be sitting here if they had gone . . .
to get the blood test . . . .








Furthermore, when Appellant
testified, his counsel questioned him about the circumstances of all of his
prior convictions.  Appellant=s counsel then questioned him as follows:

Q.  So you have had quite an
extensive history in criminal history. Correct?

 

A.  Yes, sir.

 

Q.  How many jury trials or
bench trials have you been through on all of these charges?

 

A.  None.

 

Q.  Why?

 

A.  Because I have always been
guilty.

 

Q.  Why aren=t you
pleading guilty this time?

 

. . . .

 

A.  Because I=m not
guilty.  

 








This case
demonstrates the Ainadequacies
inherent in evaluating ineffective assistance claims on direct appeal.@  Patterson v. State, 46
S.W.3d 294, 306 (Tex. App.CFort Worth 2001, no pet.). 
Appellant did not file a motion for new trial to afford the trial court
the opportunity to hold a hearing and inquire into the reasons for trial
counsel=s acts.  Consequently, we cannot
determine whether counsel=s actions
were grounded in sound trial strategy because the record is silent as to
possible trial strategies, and we will not speculate on the reasons for those
strategies.  See Jackson,
877 S.W.2d at 771; Patterson, 46 S.W.3d at 306.  The record is also silent as to what
communications occurred between trial counsel and his client.  See Strickland, 466 U.S. at 691, 104
S. Ct. at 2066 (noting that inquiry into counsel=s conversations with defendant may be critical to proper assessment of
counsel=s litigation decisions because counsel=s actions are usually based on informed strategic choices made by
defendant and on information supplied by defendant).  Therefore, Appellant=s ineffective assistance claims are better raised within the framework
of a post-conviction writ of habeas corpus under article 11.07 of the code of
criminal procedure.  Tex. Code Crim. Proc. Ann. art. 11.07
(Vernon 2005); see Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim.
App. 2003) (A[T]he record
on direct appeal will generally >not be sufficient to show that counsel=s representation was so deficient as to meet the first part of the Strickland
standard= as >[t]he
reasonableness of counsel=s choices
often involves facts that do not appear in the appellate record.=@); see also Bone v. State, 77 S.W.3d 828, 837 n.30 (Tex.
Crim. App. 2002) (AThis
resolution in no way affects appellant's entitlement to re-urge this or other
appropriate constitutional complaints on a writ of habeas corpus.@).  We overrule Appellant=s second point.

 








2.     Failure to Object to
Silence After Miranda Warnings

We must next
consider Appellant=s argument
that his counsel failed to render effective assistance by allowing the
statement, without objection, that Appellant remained silent after being
advised of his Miranda rights.[6]  During the State=s case-in-chief, the prosecutor questioned Officer Chase as follows:

Q.  Okay.  And what is next?  Did you Mirandize the Defendant?

 

A.  Yes, sir.

 

. . . .

 

Q.  Did the Defendant exercise
his Miranda warnings?

 

A.  Yes, sir, he did.

 

Q.  Chose not to talk?

 

A.  Yep.

 

Defense counsel said nothing,
nor did the trial court make any comment.








The U.S.
Supreme Court has held that the due process requirement of the United States
Constitution prohibits the cross-examination of a defendant concerning his
silence after he has been arrested and given Miranda warnings.  Doyle v. Ohio, 426 U.S. 610, 619, 96
S. Ct. 2240, 2245 (1976).  The goal is to
prevent a jury from drawing inferences of guilt from a defendant=s decision to remain silent after his or her arrest.  Stroman v. State, 69 S.W.3d 325, 331
(Tex. App.CTexarkana
2002, pet. ref=d).  The same considerations bar the prosecution
from using evidence of such silence as part of its case-in-chief against the
defendant.  Id.  And under Texas law, the prosecution=s commenting on post-arrest silence, whether before or after the
giving of Miranda warnings, is a violation of an accused=s right to be free from compelled self-incrimination under article I,
section 10 of the Texas Constitution.  Tex. Const. art. I, ' 10; see Sanchez v. State, 707 S.W.2d 575, 580 (Tex. Crim. App.
1986).








Again,
however, the record is silent as to why Appellant=s trial counsel chose not to object to the prosecutor=s questions to Officer Chase. 
His trial counsel may have wanted Appellant to appear open and honest
with the jury.  See Stroman, 69
S.W.3d at 332.  Or his trial counsel may
have wished to minimize any effect of the testimony on the jury.  See, e.g., Abram v. State, No.
11-02-00368-CR, 2004 WL 42549, at *6 (Tex. App.CEastland Jan. 8, 2004, no pet.) (not designated for publication)
(noting that trial counsel may have wished to minimize any effect on the jury
when counsel failed to object to the admission of testimony regarding appellant=s post-arrest silence).  For an
undetermined reason, counsel did not object, and only further inquiry may
provide the information necessary to make the proper determination whether he
provided the effective assistance envisioned under the Sixth Amendment.  See Thompson, 9 S.W.3d at 814.  Therefore,
as previously stated, Appellant=s ineffective assistance claims are better raised through an
application for a writ of habeas corpus. 
See Tex. Code Crim. Proc.
Ann. art. 11.07.  We overrule
Appellant=s third
point.

V.     Conclusion

Having
overruled Appellant=s three
points on appeal, we affirm the trial court=s judgment.

PER CURIAM

 

PANEL F:    GARDNER, HOLMAN, and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  March 9, 2006











[1]See Tex. R. App. P. 47.4.





[2]Appellant
testified that he carried a second set of keys in his pocket. 





[3]Officer
Chase testified that he based his arrest of Appellant on the information
gathered from the two Fort Worth police officers and his own observations,
including the strong odor of alcohol coming from Appellant=s
breath as he spoke, his slurred speech, his red, heavy, and watery eyes, and
his poor performance on the various field sobriety tests. 





[4]The
indictment alleged two prior DWI convictions and an enhancement. 





[5]At
trial, Appellant=s
counsel allowed the admission into evidence of two convictions for robbery in
1979 and 1980, respectively, a conviction for unlawfully carrying a weapon in
1990, three misdemeanor convictions for DWI in 1992, 1994, and 1997, respectively,
and three convictions for DWI and felony repetition in 1999 and 2000.  Appellant apparently does not contend that
the three felony convictions for DWI were inadmissible under Rule 609.  See Tex.
R. Evid. 609; Lopez v. State, 990 S.W.2d 770, 778 (Tex. App.CAustin
1999, no pet.) (concluding that appellant=s prior felony convictions
for DWI were admissible under Rule 609). 
Rather, Appellant argues that the two felony convictions for robbery
were inadmissible because they were over ten years old and that the misdemeanor
convictions were inadmissible because they were not offenses involving moral
turpitude. 





[6]See
Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 1630
(1966).