In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00137-CR


______________________________




EUGENE STROMAN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 185th Judicial District Court


Harris County, Texas


Trial Court No. 860612




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Cornelius



O P I N I O N



 The police found crack cocaine in the apartment where Eugene Stroman and his wife, Renee, 
resided. A jury later convicted Eugene Stroman of possession of cocaine in an amount greater than
one gram but less than four grams. Pursuant to the habitual offender statute, see Tex. Pen. Code
Ann. § 12.42(d) (Vernon Supp. 2002), the jury assessed Stroman's punishment at sixty years'
confinement. On appeal, Stroman challenges the legal and factual sufficiency of the evidence and
contends he received ineffective assistance of counsel. We affirm the judgment.

 Stroman challenges both the legal and factual sufficiency of the evidence on the ground that
the State failed to affirmatively link him to the cocaine. In reviewing the legal sufficiency of the
evidence, we look at all of the evidence in the light most favorable to the verdict to determine
whether any rational trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). In reviewing the factual sufficiency
of the evidence, we begin with the presumption that the evidence is legally sufficient, see Clewis v.
State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996), and we view all of the evidence without the
prism of "in the light most favorable to the verdict." Jones v. State, 944 S.W.2d at 647. We
determine whether a neutral review of all the evidence, both for and against the verdict, demonstrates
that the proof of guilt is so obviously weak as to undermine confidence in the jury's verdict, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Johnson
v. State, 23 S.W.3d 1, 15 (Tex. Crim. App. 2000). If we find factual insufficiency, we vacate the
conviction and remand the cause for a new trial. Jones v. State, 944 S.W.2d at 648; Clewis v. State,
922 S.W.2d at 133-35.

 Stroman was convicted of possession of cocaine. See Tex. Health & Safety Code Ann.
§§ 481.102(3)(D), 481.115(c) (Vernon Supp. 2002). To support Stroman's conviction, the State
must have shown (1) that Stroman exercised actual care, control, or custody of the substance, (2) that
he was conscious of his connection with it, and (3) that he possessed the substance knowingly or
intentionally. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); Jones v. State, 963
S.W.2d 826, 830 (Tex. App.-Texarkana 1998, pet. ref'd). The evidence used to satisfy these
elements may be direct or circumstantial. Brown v. State, 911 S.W.2d at 747; Jones v. State, 963
S.W.2d at 830. Whether direct or circumstantial evidence is used, the State must establish that
Stroman's connection with the drugs was more than just fortuitous. Brown v. State, 911 S.W.2d at
747; Jones v. State, 963 S.W.2d at 830. If the contraband was not found on Stroman's person or it
was not in his exclusive possession, additional facts must affirmatively link him to the contraband.
Jones v. State, 963 S.W.2d at 830. The affirmative links ordinarily emerge from an orchestration
of several factors and the logical force they have in combination. Id. 

 Factors to be considered when evaluating affirmative links include: (1) whether Stroman was
present when the search was executed; (2) whether the contraband was in plain view; (3) Stroman's
proximity to and the accessibility of the contraband; (4) whether Stroman was under the influence
of a controlled substance when arrested; (5) whether Stroman possessed other contraband when
arrested; (6) whether Stroman made incriminating statements when arrested; (7) whether he
attempted to flee; (8) whether he made furtive gestures; (9) whether there was an odor of the
contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether Stroman
owned or had the right to possess the place where the drugs were found; and (12) whether the place
the drugs were found was enclosed. Id. The number of factors present is less important than the
logical force the factors have in establishing the elements of the offense. See Gilbert v. State, 874
S.W.2d 290, 298 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd). 

 The trial court instructed the jury on the law of parties. It explained to the jury that it should
find Stroman guilty as charged if it determined he was a party to his wife's commission of drug
possession. Tracking the language of the Texas Penal Code, the instruction stated that a person is
criminally responsible for an offense committed by the conduct of another if, acting with intent to
promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts
to aid the other person to commit the offense. See Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 1994). 
The instruction also stated that mere presence alone is not sufficient to constitute a person being a
party to an offense. 

 If the State is to prove an accused guilty as a party, it must first prove the guilt of another
person as the primary actor. See Richardson v. State, 879 S.W.2d 874, 882 (Tex. Crim. App. 1993);
Forbes v. State, 513 S.W.2d 72, 79 (Tex. Crim. App. 1974). In order to establish liability as a party,
the State must show that in addition to the illegal conduct by the primary actor, the accused harbored
the specific intent to promote or assist the commission of the offense. See Lawton v. State, 913
S.W.2d 542, 555 (Tex. Crim. App. 1995); Tucker v. State, 771 S.W.2d 523, 530 (Tex. Crim. App.
1988); Garcia v. State, 871 S.W.2d 279, 281 (Tex. App.-El Paso 1994, no pet.). The State must
show more than mere presence of the defendant to establish participation in a criminal offense. See
Valdez v. State, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981). Mere presence or even knowledge
of an offense does not make one a party to the offense. See Oaks v. State, 642 S.W.2d 174, 177
(Tex. Crim. App. 1982). Evidence is sufficient where an accused is present and encourages the
commission of the offense by words or other agreement, so long as the evidence shows the parties
were acting together, each contributing toward a common purpose. Cabrera v. State, 959 S.W.2d
692, 695 (Tex. App.-Dallas 1998, pet. ref'd). 

 The facts in this case are as follows. Several police officers assigned to investigate drug
crimes testified for the State. The first officer, Michael Williams, testified that he conducted
surveillance on the apartment occupied by Stroman and his wife on the day the police executed the
search warrant that resulted in the charges against Stroman. The primary, but not exclusive, purpose
of the surveillance was to investigate Renee Stroman. From approximately seventy-five yards'
distance, Williams surveyed the apartment for forty-five minutes to an hour. While doing so, on two
separate occasions, he saw people coming to the apartment and conducting what appeared to be drug
transactions at the front entrance of the apartment. Renee Stroman, not her husband, answered the
door on these occasions. Williams did not see Stroman participate in any transaction. Other than
this officer's testimony that these transactions appeared from seventy-five yards away to be drug
transactions, no evidence was introduced to show that these were in fact drug transactions..

 The second police officer, George Craig, testified that he participated in executing the search
warrant on Stroman's apartment. On entering the apartment, the police found Renee Stroman sitting
on a couch, apparently in the living room, and Eugene Stroman sitting on the edge of the bed in the
bedroom. The officers found three crack pipes (instruments for smoking crack cocaine) lying on the
couch beside Renee Stroman. The crack pipes had been used previously. 

 The third testifying police officer, John Huston, supervised the execution of the search
warrant and the ensuing investigation. He testified that in order to obtain a search warrant for the
apartment, the police had arranged a "controlled buy" whereby an informant went to the apartment,
purchased narcotics, and then reported back to the police. During the search, the officers found a
partially smoked marihuana cigarette in an ashtray in what was described as a computer room, and
the crack cocaine, which Stroman is accused of possessing, was found wrapped in cellophane and
tissue paper in the pocket of a pair of men's shorts. These shorts were on the top shelf of the walk-in
closet of the bedroom where Stroman was sitting. The closet contained both men's and women's
clothing. It appeared that the closet was shared by Eugene and Renee Stroman. It appeared that all 
the men's clothes were on one side of the closet and all the women's clothes were on the other side. 
The shorts in which the cocaine was found were located on a shelf above where the men's clothes
were hanging, and the shorts were designed as men's shorts. The officers also testified that a police
dog trained to find narcotics by scent was brought into the apartment. The officer controlling the dog
interpreted the dog's behavior as indicating the smell of drugs in a dresser drawer, but no drugs were
found there. The officer testified that the odor of drugs would remain in a closed space such as a
drawer for a considerable time after the drugs were removed. The officers also found a partially
burned marihuana cigarette and testified they could detect the odor of burned marihuana in the
apartment. The partially burned marihuana and the crack pipes were in plain view. 

 The fourth officer, James Kravetz, confirmed the account of the crack cocaine being found
in the shorts in the closet. He also described the closet in essentially the same way as the previous
police officer. However, he agreed that a woman could have worn the shorts, that no fingerprints
were found connecting Stroman to the cocaine, and that Stroman had made no sudden movements
when the police entered. The fifth and final police officer, Gary Bender, confirmed finding the
marihuana cigarette in the computer room. Stroman did not testify in his defense, and defense
counsel called only one witness, who offered only slight evidence of Stroman's good character. Viewing all of this evidence in the light most favorable to the verdict, we find some evidence
supporting the allegation that Stroman knowingly possessed the crack cocaine or was a party to his
wife's commission of the offense of cocaine possession. The apartment seems to have been a locale
for drug activity. The apartment was leased and occupied by Stroman and his wife. The crack
cocaine was found in Stroman's bedroom, jointly shared with his wife. The crack cocaine was in
clothing that the jury was entitled to believe belonged to Stroman, and he was relatively close to the
drugs when they were found. We therefore find the evidence legally sufficient to support the verdict.

 We also find the evidence factually sufficient to support a conviction of Stroman either as
a principal or as a party. Although none of the drugs was found in Stroman's actual personal
possession, we find sufficient affirmative links to support a finding that Stroman possessed the
contraband either exclusively or with his wife. Joint possession is sufficient to support Stroman's
conviction. At least seven of the twelve illustrative affirmative links listed earlier in this opinion
apply to Stroman. Stroman was present when the apparent drug transactions at the apartment were
conducted, and he was present when the search was made; some of the contraband was in plain view,
e.g., the marihuana cigarette and the drug paraphernalia; Stroman was close to the contraband and
it was easily accessible to him; there was an odor of the contraband; drug paraphernalia was present;
Stroman was the legal and actual possessor of the place where the contraband was found; and the
place where the contraband was found was enclosed. These affirmative links are more than
sufficient to show that Stroman possessed the drugs either personally or jointly with Renee Stroman.

 Because it is an independent ground for reversal, we will also consider Stroman's claim of
ineffective assistance of counsel under both state and federal constitutional law. The two-pronged
standard for testing claims of ineffective assistance of counsel is set out by the United States
Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),
and adopted for Texas constitutional claims in Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim.
App. 1986). First, Stroman must show that his counsel's representation fell below an objective
standard of reasonableness. Strickland v. Washington, 466 U.S. at 688. To prove this deficiency
in representation, Stroman must demonstrate that his counsel's performance deviated from prevailing
professional norms. Id.; McFarland v. State, 845 S.W.2d 824, 842-43 (Tex. Crim. App. 1992). 
Stroman must also show prejudice. The appropriate standard for judging prejudice requires Stroman
to show there is a reasonable probability that, but for his counsel's unprofessional errors, the result
of the proceeding would have been different. A reasonable probability is a probability sufficient to
undermine confidence in the outcome. Strickland v. Washington, 466 U.S. at 694. 

 This does not mean that an accused is entitled to errorless or perfect counsel. See Bridge v.
State, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). Whether the Strickland test has been met is
to be judged by the totality of the representation, and the judicial review of counsel's performance
must be highly deferential. Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). In
assessing a claim of ineffective assistance, we indulge a strong presumption that counsel's conduct
was within the wide range of reasonable professional assistance; Stroman must overcome the
presumption that under the circumstances, the challenged action might be considered sound trial
strategy. Strickland v. Washington, 466 U.S. at 689. Also, in the absence of evidence of counsel's
reasons for the challenged conduct, we assume a strategic motivation if any can possibly be
imagined, Garcia v. State, 57 S.W.3d 436 (Tex. Crim. App. 2001) (citing 3 W. LaFave, et al.,
Criminal Procedure § 11.10(c) (2d ed. 1999)). We will not conclude that the challenged conduct
constituted deficient performance unless the conduct was so outrageous that no competent attorney
would have engaged in it. Id. 

 Stroman challenges his counsel's failure to object to testimony that he remained silent after
he had been arrested and given the Miranda warnings. Miranda v. Arizona, 84 U.S. 436, 86 S. Ct.
1602, 16 L.Ed.2d 694 (1966). In Doyle v. Ohio, the Supreme Court held that the due process
requirement of the United States Constitution prohibits the cross-examination of a defendant
concerning his silence after he has been arrested and given the Miranda warnings. Doyle v. Ohio,
426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The goal of Doyle is to prevent a jury from
drawing inferences of guilt from a defendant's decision to remain silent after his or her arrest.
Gravley v. Mills, 87 F.3d 779, 788 (6th Cir. 1996). The same considerations bar the prosecution
from using evidence of such silence as part of its case-in-chief against the defendant. 41 George E.
Dix & Robert O. Dawson, Texas Practice, Criminal Practice and Procedure § 13.312, at
178 (2d ed. 2001). And under Texas law, the prosecution's commenting on post-arrest silence,
whether before or after the giving of Miranda warnings, is a violation of an accused's right to be free
from compelled self-incrimination under Article I, section 10 of the Texas Constitution. Tex.
Const. art. I, § 10; see Sanchez v. State, 707 S.W.2d 575, 580 (Tex. Crim. App. 1986).

 In response to an unrelated question by the State, the third testifying police officer, John
Huston, stated that after Stroman had been given the Miranda warnings, he "was not cooperative"
and "didn't answer any questions." On hearing these comments, the State immediately warned
Huston to avoid testifying to any hearsay statements. Defense counsel said nothing, nor did the trial
court make any comment. Shortly thereafter, the State called its next witness, the fourth police
officer, James Kravetz. Despite the warning the State gave to the previous witness, the State asked
Kravetz whether Stroman had been cooperative and whether he had answered questions after the
Miranda warnings had been read to him. Kravetz replied, "no, not at all." The trial court again made
no comment, nor did defense counsel object. 

 We note that counsel's failure to object to inadmissible evidence may constitute a plausible
trial strategy such as a plan to appear open and honest with the jury. See Thompson v. State, 915
S.W.2d 897, 904 (Tex. App.-Houston [1st Dist.] 1996, pet. ref'd); Varughese v. State, 892 S.W.2d
186, 196 (Tex. App.-Fort Worth 1994, pet. ref'd). Moreover, Stroman bears the burden to produce
evidence as to counsel's motivation and trial strategy so we can determine whether it was reasonable. 
The Court of Criminal Appeals has recognized that an appellant bears an almost impossible burden
in this regard on a direct appeal because of the insufficiency of the record and that it will in many
cases be necessary to raise an ineffective representation claim in a post-conviction writ of habeas
corpus. See Thompson v. State, 9 S.W.3d 808 (Tex. Crim. App. 1999); Jackson v. State, 973 S.W.2d
954 (Tex. Crim. App. 1998). Nevertheless, we cannot adequately judge this issue without an
adequate record.

 Because Stroman has failed to carry his burden to show that counsel was deficient in the
totality of the representation, we need not inquire into whether he has shown harm.

 For the reasons stated, we overrule Stroman's points of error and affirm the judgment.


 William J. Cornelius

 Chief Justice


Date Submitted: December 26, 2001

Date Decided: February 8, 2002


Publish