In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00184-CR


______________________________




TYRONE WILLIAMS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 07-0295X




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Changes in market prices sometimes drive the motives for burglary or theft. As the price of
copper has soared, Panola-Harrison Electric Cooperative and other consumers of the metal have
found themselves in possession of an increasingly attractive lure for burglars. 

 Marshall policemen responded to a tripped burglar alarm at the Panola-Harrison Electric
Cooperative warehouse on July 15, 2007, and observed several suspects in flight from the premises. 
Surveillance video cameras on the premises recorded three individuals moving several coils of
copper wire from the warehouse to the loading dock; faces of the intruders were covered by hoods. 
In their sweep of the area, the police discovered Tyrone Williams hiding in a wooded lot less than
fifty yards from Panola-Harrison. When found, Williams was clad in clothes which were similar to
those worn by one of the individuals whose photograph was captured on the surveillance camera's
videotape; he had latex gloves, had multiple scratches and scrapes consistent with fleeing through
the woods, and was soaking wet (a creek runs between the site where Williams was located and the
Panola-Harrison facility). 

 Williams was convicted by a jury of the burglary of a building; he now appeals, basing his
appeal on what he alleges is an error in instructions given to the jury and a claim of legally and
factually insufficient evidence to sustain his conviction. 

The Trial Court Did Not Err in Instructing the Jury on the Law of Parties

 Williams contends, in his third point of error, that the trial court erred in instructing the jury
as to the law of parties. According to Williams, all of the State's evidence was directed toward
establishing Williams's liability as a principal.

 In analyzing a jury charge complaint, we first determine whether error exists in the charge
and, then, if there was error, whether sufficient harm resulted from the error to compel reversal. Ngo
v. State, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005). When error occurs in failing to properly
instruct the jury, our review of the charge is under the Almanza standard. Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

 A person is criminally culpable as a party if, with intent to promote or assist the commission
of the offense, the person solicits, encourages, aids, directs, or attempts to aid, another person in
commission of the offense. Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 2003). The evidence is
sufficient to sustain a conviction under the law of parties if that evidence shows that the defendant
was physically present during the commission of the offense and that the defendant encouraged or
aided the crime's commission by either words, agreement, or other affirmative and supportive
conduct. King v. State, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000); Ransom v. State, 920 S.W.2d
288, 301 (Tex. Crim. App. 1994) (op. on reh'g).

 When there is evidence that the defendant is guilty as a party, a trial court may charge the jury
on the law of parties even if the indictment charges the defendant as a principal. Swope v. State, 805
S.W.2d 442, 444 (Tex. Crim. App. 1991); Rosillo v. State, 953 S.W.2d 808, 811 (Tex.
App.--Corpus Christi 1997, pet. ref'd); see Marable v. State, 990 S.W.2d 421, 424 (Tex.
App.--Texarkana 1999), aff'd, 85 S.W.3d 287 (Tex. Crim. App. 2002); see also Tex. Penal Code
Ann. § 7.01(c) (Vernon 2003). "'In determining whether a defendant participated in an offense as
a party, the court may examine the events occurring before, during, and after the commission of the
offense, and may rely on actions of the defendant which show an understanding and common design
to commit the offense.'" Rivera v. State, 12 S.W.3d 572, 575-76 (Tex. App.--San Antonio 2000,
no pet.) (quoting Burdine v. State, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986), superseded by rule
change as stated in Barnes v. State, 876 S.W.2d 316, 325 (Tex. Crim. App. 1994)). 

 The State presented considerable evidence that there were multiple persons involved in the
burglary. As discussed in more detail below, the surveillance camera at the Panola-Harrison building
recorded that there were three persons on the premises who were involved in attempting to take
possession of copper wire. The police observed two suspects fleeing the scene. The videotape
recorded the image of a person holding a crowbar; that person wore clothes similar to those worn
by Williams when he was discovered hiding nearby. There was sufficient evidence of a common
purpose to raise the issue of whether Williams was guilty as a party. The trial court did not err in
instructing the jury on the law of parties. Because there is no error, it is not necessary for us to
proceed to the harm analysis under Almanza. Williams's third point of error is overruled.

The Evidence Is Legally and Factually Sufficient

 In his first and second points of error, Williams argues that the evidence presented to the jury
is both legally and factually insufficient to sustain his conviction. According to Williams, the
evidence is insufficient to establish that Williams was one of the burglars. In the alternative,
Williams argues the State merely proved he was present during the commission of the offense--not
that he was a participant in it. 

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). A person commits the offense of burglary of a building "if, without the effective
consent of the owner, the person: (1) enters a . . . building (or any portion of a building) not then
open to the public, with intent to commit a felony, theft, or an assault; . . . or (3) enters a building
. . . and commits or attempts to commit a felony, theft, or an assault." Tex. Penal Code Ann.
§ 30.02(a)(1), (3) (Vernon 2003).

 In a factual sufficiency review, we likewise review all the evidence, but do so in a neutral
light and determine whether the evidence supporting the verdict is so weak or is so outweighed by
the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or
manifestly unjust. (1) Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Marshall v.
State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson, 204 S.W.3d at 414-15; Clewis v. State,
922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

 Panola-Harrison kept an inventory of transformers, copper wire, and aluminum wire at the
facility. Because Panola-Harrison had been experiencing thefts, it had installed four video cameras
which fed videotape machines and a burglar alarm which was activated by a motion sensor. The
alarm was monitored by an employee of Panola-Harrison who lived near the facility. Around 11:25
on the night of the theft, the employee contacted his supervisor and notified the police that the alarm
had been triggered. As Richard Fischer, the operations supervisor for Panola-Harrison, unlocked the
gate for the police, a suspect peered around the side of the building and fled, with the officers in
pursuit. The police pursued two suspects who eluded the police by scaling Panola-Harrison's fence. 
After the officers returned from the initial unsuccessful pursuit, the police and Fischer reviewed the
footage of the videotape from the security cameras. The videotape showed three men staging copper
to be removed from the facility. Although there was actually no copper wire removed from the
premises at that time, several coils of copper wire had been moved to the loading dock, presumably
to be taken from that location. 

 While the other officers were pursuing the suspects they had observed inside the fence of
Panola-Harrison, Officer Kenneth Phillips proceeded around the perimeter of the fence with a police
dog which had been trained and certified in spoor tracking. Officer Phillips had observed the
suspects elude the other officers and proceeded to the edge of the wooded lot where the suspects had
fled. "Within a couple of minutes" after being placed on the spoor trail, the canine located Williams
lying on his back about fifty yards from the fence. Williams was dirty and wet. There was a creek
between Williams's location and the Panola-Harrison building. Williams was also breathing hard,
had torn his clothes, had cuts on his hands, and had white latex gloves "on his person." Officer C. J.
Boyd, who assisted Officer Phillips in detaining Williams, testified Williams was wet, breathing
hard, and was "wearing latex gloves." Williams's cuts and abrasions were photographed after his
arrest and the photographs were admitted into evidence. Sergeant David Reaves testified that the
cuts and abrasions were consistent with what might be inflicted on an individual who had fled over
a fence and through a dense wooded area. Victor Schwartz, the general manager of Panola-Harrison,
testified he did not give Williams permission to be in the building or to take anything from the
building. 

 Williams's contention that the State must show more than mere presence of the defendant to
establish participation in a criminal offense is a correct one. See Stroman v. State, 69 S.W.3d 325,
329 (Tex. App.--Texarkana 2002, pet. ref'd); see also Valdez v. State, 623 S.W.2d 317, 321 (Tex.
Crim. App. [Panel Op.] 1981) (op. on reh'g). The evidence, though, does show more than mere
presence. Williams was wearing or had latex gloves and appeared to be the same person observed
holding a crowbar on the surveillance videotape. Based on the circumstantial evidence, a rational
juror could have concluded beyond a reasonable doubt that Williams was one of the three intruders
and that Williams, either as a principal or a party, committed burglary of a building. The evidence
is legally sufficient. Williams's first point of error is overruled.

 Williams argues the State's evidence proving he was one of the intruders is so weak that the
jury's verdict is manifestly unjust. We note the State's evidence proving identity is entirely
circumstantial. Because the men had "hoods on and stuff," the intruders could not be identified from
the videotape and the other two intruders who eluded capture and fled the scene could not be
identified. The videotape did show that one of the three intruders, who had a crowbar, was wearing
a dark short-sleeved shirt and white latex gloves. A crowbar was found at the scene which did not
belong to Panola-Harrison. 

 Circumstantial evidence can be as probative as direct evidence in establishing the guilt of an
actor, and circumstantial evidence alone can be sufficient to establish guilt. Guevara v. State, 152
S.W.3d 45, 49 (Tex. Crim. App. 2004). In a factual sufficiency review, we are to afford "due
deference" to a jury's determinations. Marshall, 210 S.W.3d at 625. "Although an appellate court
reviewing factual sufficiency has the ability to second-guess the jury to a limited degree, the review
should still be deferential, with a high level of skepticism about the jury's verdict required before a
reversal can occur." Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). We are unable
to reach the high level of skepticism required to reverse for factual sufficiency. The evidence of guilt
is not so weak that the jury's verdict is manifestly unjust or clearly wrong. 

 Williams argues that "the physical evidence recovered from the site and recovered from
Appellant suggested that Appellant had not been at the site." Lieutenant Reid McCain was unable
to detect any fingerprints on the crowbar or sunglasses left at the scene. One observes that it is
common knowledge that a person wearing latex gloves will leave no trace of fingerprints. Several
footprints were photographed at the scene, but Williams's boots did not appear to match any of the
footprints. Further, Williams's pants did not have any mud on them consistent with having caused
the "knee prints" located at the scene. Even if one considers this as contrary evidence, the failure
of the police to link Williams to the crime with fingerprint evidence or match Williams's boots to
the footprints at the scene does not establish the jury's verdict was so contrary to the great weight and
preponderance of the evidence that the verdict was manifestly unjust or clearly wrong. The evidence
is factually sufficient. Williams's second point of error is overruled.

 We affirm the judgment.




 Bailey C. Moseley

 Justice


Date Submitted: June 9, 2008

Date Decided: June 10, 2008


Do Not Publish

1. We note that Williams cites Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App.
2004), as the current standard of review. Zuniga was overruled by the Texas Court of Criminal
Appeals in Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).