02-10-245-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00245-CR

 

 


 
 
 James Gannaway
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 362nd
District Court OF Denton COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

          Appellant
James Gannaway appeals his conviction for driving while intoxicated.  In two
points, Gannaway argues that he received ineffective assistance of counsel at
trial.  We will affirm.

II.  Background

          After
having worked from approximately 8:00 a.m. until 6:30 p.m. on May 27, 2009,
Gannaway left work.  Officer Scott Hayney of the Lewisville Police Department
pulled over Gannaway because he was driving in excess of 100 miles per hour.  According
to Hayney, when Gannaway first pulled over, he exited his vehicle.  Hayney’s
response was to order Gannaway back into his vehicle.  Hayney then approached
the passenger side of Gannaway’s vehicle.  When Gannaway did not notice him at
the window, he knocked on it.  Hayney said that when Gannaway eventually rolled
down his window, Hayney could smell the strong odor of an alcoholic beverage.  Hayney
asked Gannaway to exit his vehicle.  When he did so, Hayney noticed that
Gannaway slurred his speech; had a flushed face and red, glassy eyes; and
smelled of alcoholic beverage.  Hayney asked Gannaway to recite the alphabet
and count backwards.  After Gannaway failed these two tests, Hayney conducted
the standardized tests—the horizontal gaze nystagmus, the walk-and-turn, and
the one-legged stand.  Hayney testified that Gannaway failed all three of these
tests; thus, Hayney placed Gannaway under arrest for driving while
intoxicated.  After later being placed in Hayney’s vehicle, Gannaway fell
asleep and continued to sleep until the two arrived at the police station.  Hayney
placed Gannaway in an intoxilyzer room and read him the required statutory
warnings.  Gannaway refused to provide a specimen.  Hayney testified that he
believed Gannaway was intoxicated from the consumption of alcohol when he
pulled Gannaway over.

          At
trial, Gannaway’s trial counsel called Dr. Phillip Isbell, a family physician. 
Isbell testified that after examining Gannaway, he was of the opinion that
Gannaway demonstrated signs of having previously suffered from a concussion, he
suffered from untreated hypertension, and he demonstrated a “perversion” of the
nystagmus reflex.  Isbell also testified that Gannaway suffered from an
imbalance when walking on his heels that “cause[s] him to sort of jolt to the
left.”  Isbell said that he believed that Gannaway would be unable to perform a
test of standing on one leg and would most likely always demonstrate a
nystagmus condition whether he was under the influence of alcohol or not.

          Gannaway’s
trial counsel also called Kevin Higginbotham—Gannaway’s manager at work.  The
State objected to some of trial counsel’s questioning.  Citing hearsay and
relevance, the State objected that any questions designed to elicit what Gannaway
might have said to Higginbotham regarding how tired Gannaway might have been in
the days leading up to his arrest and how he might have lost sleep over his
fiancée having recently died were improper.  The trial court partially sustained
the State’s objection and instructed Gannaway’s trial counsel to limit his
questioning to events of May 27, 2009.  Higginbotham testified that he worked
with Gannaway on May 27, 2009.  He said that Gannaway had worked from 8:00 a.m.
to approximately 6:30 p.m.  Higginbotham averred that May 27, 2009, was
“warmer” than normal, that Gannaway had been quiet the day of work, and that
Gannaway did not drink at work the day of his arrest.

          A
jury found Gannaway guilty and made an affirmative finding that he had used his
vehicle as a deadly weapon.  After Gannaway pleaded true to two enhancement
paragraphs, the trial court assessed punishment at sixty-nine and one-half
years’ incarceration.  Afterwards, Gannaway filed a motion for new trial alleging,
among other things, that his trial counsel had been ineffective.  After a
hearing, the trial court denied Gannaway’s motion.  Gannaway filed a timely
notice of appeal.

III.  Discussion

A.      Higginbotham’s
Testimony Regarding Gannaway’s Fatigue.

In
his first point, Gannaway complains that his trial counsel was ineffective by
“failing to present testimony from [] Higginbotham that would have tended to
explain why [Gannaway fell] asleep in the police vehicle immediately after his
arrest.”

To
establish ineffective assistance of counsel, Gannaway must show by a
preponderance of the evidence that his counsel’s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel’s deficiency, the result of the trial would
have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104
S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d 734, 740
(Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62–63 (Tex.
Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim.
App. 1999).

          In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable
under all the circumstances and prevailing professional norms at the time of
the alleged error.  See Strickland, 466 U.S. at 688–89, 104 S. Ct.
at 2065.  Review of counsel’s representation is highly deferential, and the
reviewing court indulges a strong presumption that counsel’s conduct fell
within a wide range of reasonable representation.  Salinas, 163 S.W.3d
at 740; Mallett, 65 S.W.3d at 63.  A reviewing court will rarely be in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Salinas, 163 S.W.3d at 740; Thompson, 9 S.W.3d
at 813–14.  “In the majority of cases, the record on direct appeal is
undeveloped and cannot adequately reflect the motives behind trial counsel’s
actions.”  Salinas, 163 S.W.3d at 740 (quoting Mallett, 65 S.W.3d
at 63).  To overcome the presumption of reasonable professional assistance,
“any allegation of ineffectiveness must be firmly founded in the record, and
the record must affirmatively demonstrate the alleged ineffectiveness.”  Id.
(quoting Thompson, 9 S.W.3d at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State, 226 S.W.3d 425, 432 (Tex. Crim.
App. 2007).

          The
second prong of Strickland requires a showing that counsel’s errors were
so serious that they deprived the defendant of a fair trial, i.e., a trial with
a reliable result.  Strickland, 466 U.S. at 687, 104 S. Ct.
at 2064.  In other words, appellant must show there is a reasonable probability
that, but for counsel’s unprofessional errors, the result of the proceeding
would have been different.  Id. at 694, 104 S. Ct. at 2068.  A
reasonable probability is a probability sufficient to undermine confidence in
the outcome.  Id.  The ultimate focus of our inquiry must be on the
fundamental fairness of the proceeding in which the result is being
challenged.  Id. at 697, 104 S. Ct. at 2070.

We
review the Strickland standards “through the prism of an abuse of
discretion standard” when analyzing a trial court’s ruling on a motion for new
trial based on ineffective assistance of counsel.  State v. Gill, 967
S.W.2d 540, 542 (Tex. App.—Austin 1998, pet. ref’d); see also Rodriguez v.
State, 329 S.W.3d 74, 81 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing
Charles v. State, 146 S.W.3d 204, 207–08 (Tex. Crim. App. 2004), superseded
by rule on other grounds by Tex. R. App. P. 21.8(b).  We view evidence
in the light most favorable to the trial court’s ruling, and we will reverse
only if no reasonable view of the record could support the trial court’s
finding.  Charles, 146 S.W.3d at 208.

Gannaway’s
trial counsel stated at the hearing on the motion for new trial that his tactic
in calling Higginbotham was to demonstrate that Gannaway was tired the day he
was arrested:  “[T]he intention was to prove that [] Gannaway was fatigued . . .
[T]he intention was to show he was tired and had a reason to be tired.  That
was the intention.”

During
his opening statement, trial counsel told the jury that approximately one week
prior to Gannaway’s arrest, his fiancée had died and, as a result, Gannaway had
suffered several sleepless nights.  And trial counsel did in fact ask
Higginbotham about the length of day Gannaway had worked, the type of work he
performed, and the limited number of employees working the day he was arrested;
and he elicited testimony that the day was warmer than normal.  This testimony
was elicited despite the trial court’s having put strict constraints on the
timeframe about which trial counsel was allowed to question Higginbotham regarding
Gannaway’s conduct.

During
closing argument, trial counsel attempted to defend Gannaway’s having fallen
asleep in the police vehicle by echoing Higginbotham’s testimony:  “You heard
testimony about how long [] Gannaway was working that day.  You heard about the
conditions he was working under. . . .  It’s up to you to decide
was that a person passed out from drinking too much, or is that a person that’s
just exhausted and fell asleep?”

Gannaway
argues that his trial counsel was ineffective “in failing to present testimony
from [] Higginbotham that would have tended to explain why [Gannaway fell]
asleep in the police vehicle immediately after his arrest.”  We disagree with
Gannaway’s assertion and conclude that trial counsel did question Higginbotham
about Gannaway’s alleged fatigue.  Furthermore, our review of trial counsel’s
conduct is not restricted to one isolated portion of the trial.  Our review of
the record reveals that in addition to calling Higginbotham to the stand to
testify regarding Gannaway being fatigued, trial counsel also introduced
evidence that Gannaway had medical reasons for failing the field-sobriety
tests.  Specifically, trial counsel called a medical expert to explain that
Gannaway had previously suffered a concussion and suffered from multiple
medical conditions that would affect his nystagmus reaction and his ability to
perform tests that involved standing on one foot or walking.

Viewing
the evidence in the light most favorable to the trial court’s ruling and
looking at the totality of the representation and particular circumstances of
this case, we conclude that Gannaway failed to establish that his trial
counsel’s performance fell below an objective standard of reasonableness;
therefore, the first prong of Strickland is not satisfied.  See
Thompson, 9 S.W.3d at 812.  Thus, the trial court acted within its
discretion by denying Gannaway’s motion for new trial predicated on ineffective
assistance of counsel.  We overrule Gannaway’s first point.

B.      The
Prosecutor’s Comment on Gannaway’s Post-arrest Silence.

In
his second point, Gannaway contends that he also received ineffective assistance
of counsel at trial because his defense attorney did not object when the State elicited
testimony from Hayney, during the State’s case-in-chief, regarding Gannaway’s
post-arrest silence.  Specifically, Gannaway argues that the following colloquy
between the prosecutor and Hayney constituted an inadmissible comment on
Gannaway’s right to remain silent:

[Prosecutor]:         At
any point before we see you again on the second tape in the other room, does
[Gannaway] say, I’m sorry; I’m just so sleepy; I haven’t slept in days?

 

[Hayney]:              No.

 

[Prosecutor]:         Does
he make any excuse for the fact he slept throughout the entire transport to
jail?

 

[Hayney]:              No.

 

We
conclude that on this record, Gannaway has not met his burden to show that counsel’s
assistance fell below an objective standard of reasonableness by not objecting
to this colloquy.

The
United States Supreme Court held in Doyle v. Ohio that the federal Due
Process Clause prohibits the cross-examination of a defendant concerning his
silence after he has been arrested and given Miranda warnings.  426 U.S.
610, 619, 96 S. Ct. 2240, 2245 (1976).  This prohibition serves to prevent
a jury from drawing inferences of guilt from a defendant’s decision to remain
silent after being told he has a right to remain silent.  See id. at 619
n.11  The same consideration bars the prosecution from using evidence of such
silence as part of its case-in-chief against the defendant.  Stroman v.
State, 69 S.W.3d 325, 331 (Tex. App.—Texarkana 2002, pet. ref’d).

A
defendant’s rights with regard to post-arrest silence are broader under our
state constitution.  Article I, section 10 protects a defendant from compelled
self-incrimination from the moment an arrest is effectuated.  Sanchez v.
State, 707 S.W.2d 575, 579–80 (Tex. Crim. App. 1986); see Tex.
Const. art. I, § 10.  That provision protects a defendant’s post-arrest
silence regardless of whether he has been informed of his right to remain
silent.  See Sanchez, 707 S.W.2d at 582.  As a result, the State may not
refer to or admit in evidence the fact of a defendant’s silence if such silence
occurs after the defendant has been arrested, notwithstanding the fact that he
might not have been advised of his rights at that time.  See id. at 579.

This
case demonstrates the inadequacies that are inherent in evaluating ineffective assistance
claims on direct appeal.  Here, even though Gannaway filed a motion for new
trial based on alleged ineffective assistance of counsel and the trial court
held a hearing on that motion, Gannaway did not question trial counsel
regarding the colloquy in dispute; thus, the record does not show why
Gannaway’s trial counsel did not object to Hayney’s testimony regarding
Gannaway not explaining to Hayney why he fell asleep in the police cruiser. 
Simply put, any possible trial strategy is not revealed.

Because
the record is silent, we cannot determine whether trial counsel’s inaction was
grounded in sound trial strategy.  See Jackson, 877 S.W.2d at 771.  In
the absence of direct evidence of counsel’s reasons for the challenged conduct,
an appellate court will assume a strategic motivation if any can be imagined.  See
Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), cert. denied,
537 U.S. 1195 (2003); see also Gamble v. State, 916 S.W.2d 92, 93 (Tex.
App.—Houston [1st Dist.] 1996, no pet.) (presuming reasonable trial strategy
supported failure to object in face of silent record).  Gannaway takes the
position that no possible plausible trial strategy can be imagined for counsel’s
not objecting to this testimony.  We disagree.

We
note that multiple courts have posited that counsel may choose not to object to
testimony revealing a defendant’s post-arrest silence to create the appearance
that the defense is being open and completely honest with the jury.  See,
e.g., Ahmadi v. State, 864 S.W.2d 776, 783 (Tex. App.—Fort Worth 1993, pet.
ref’d) (indicating that failure to object to prosecutor’s use of post-arrest
silence was sound trial strategy); Stroman v. State, 69 S.W.3d at 332
(noting that counsel’s failure to object to police officer’s testimony regarding
defendant’s post-arrest silence may have constituted trial strategy to appear
open and honest with jury).  A plan to appear open and honest with the jury
constitutes reasonable strategy.  See Thomas v. State, 886 S.W.2d 388,
392 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d) (“[T]rial counsel’s
decision not to object to improper testimony can be a plausible trial strategy
when counsel desires to create the appearance of being open and completely
honest with regard to all questions.”).

Because
the record is silent regarding why trial counsel did not object and because a
plausible trial strategy can be imagined, Gannaway fails to overcome the
presumption that his trial counsel exercised reasonable professional judgment
when he did not object to Hayney’s testimony.  See Thompson, 9 S.W.3d at
814.  On this record, Gannaway has not met his burden to show that trial counsel’s
assistance fell below an objective standard of reasonableness.  See id. 
We overrule Gannaway’s second point.

IV.  Conclusion

          Having
overruled both of Gannaway’s points, we affirm the trial court’s judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  April 28, 2011









[1]See Tex. R. App. P. 47.4.