

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-10-00245-CR**

JAMES GANNAWAY                                                   APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant James Gannaway appeals his conviction for driving while intoxicated. In two points, Gannaway argues that he received ineffective assistance of counsel at trial. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

After having worked from approximately 8:00 a.m. until 6:30 p.m. on May 27, 2009, Gannaway left work. Officer Scott Hayney of the Lewisville Police Department pulled over Gannaway because he was driving in excess of 100 miles per hour. According to Hayney, when Gannaway first pulled over, he exited his vehicle. Hayney's response was to order Gannaway back into his vehicle. Hayney then approached the passenger side of Gannaway's vehicle. When Gannaway did not notice him at the window, he knocked on it. Hayney said that when Gannaway eventually rolled down his window, Hayney could smell the strong odor of an alcoholic beverage. Hayney asked Gannaway to exit his vehicle. When he did so, Hayney noticed that Gannaway slurred his speech; had a flushed face and red, glassy eyes; and smelled of alcoholic beverage. Hayney asked Gannaway to recite the alphabet and count backwards. After Gannaway failed these two tests, Hayney conducted the standardized tests—the horizontal gaze nystagmus, the walk-and-turn, and the one-legged stand. Hayney testified that Gannaway failed all three of these tests; thus, Hayney placed Gannaway under arrest for driving while intoxicated. After later being placed in Hayney's vehicle, Gannaway fell asleep and continued to sleep until the two arrived at the police station. Hayney placed Gannaway in an intoxilyzer room and read him the required statutory warnings. Gannaway refused to provide a specimen. Hayney testified that he believed Gannaway was intoxicated from the consumption of alcohol when he pulled Gannaway over.

2

At trial, Gannaway's trial counsel called Dr. Phillip Isbell, a family physician. Isbell testified that after examining Gannaway, he was of the opinion that Gannaway demonstrated signs of having previously suffered from a concussion, he suffered from untreated hypertension, and he demonstrated a "perversion" of the nystagmus reflex. Isbell also testified that Gannaway suffered from an imbalance when walking on his heels that "cause[s] him to sort of jolt to the left." Isbell said that he believed that Gannaway would be unable to perform a test of standing on one leg and would most likely always demonstrate a nystagmus condition whether he was under the influence of alcohol or not.

Gannaway's trial counsel also called Kevin Higginbotham—Gannaway's manager at work. The State objected to some of trial counsel's questioning. Citing hearsay and relevance, the State objected that any questions designed to elicit what Gannaway might have said to Higginbotham regarding how tired Gannaway might have been in the days leading up to his arrest and how he might have lost sleep over his fiancée having recently died were improper. The trial court partially sustained the State's objection and instructed Gannaway's trial counsel to limit his questioning to events of May 27, 2009. Higginbotham testified that he worked with Gannaway on May 27, 2009. He said that Gannaway had worked from 8:00 a.m. to approximately 6:30 p.m. Higginbotham averred that May 27, 2009, was "warmer" than normal, that Gannaway had been quiet the day of work, and that Gannaway did not drink at work the day of his arrest.

3

A jury found Gannaway guilty and made an affirmative finding that he had used his vehicle as a deadly weapon. After Gannaway pleaded true to two enhancement paragraphs, the trial court assessed punishment at sixty-nine and one-half years' incarceration. Afterwards, Gannaway filed a motion for new trial alleging, among other things, that his trial counsel had been ineffective. After a hearing, the trial court denied Gannaway's motion. Gannaway filed a timely notice of appeal.

## III. DISCUSSION

### A. Higginbotham's Testimony Regarding Gannaway's Fatigue.

In his first point, Gannaway complains that his trial counsel was ineffective by "failing to present testimony from [] Higginbotham that would have tended to explain why [Gannaway fell] asleep in the police vehicle immediately after his arrest."

To establish ineffective assistance of counsel, Gannaway must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

4

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Salinas*, 163 S.W.3d at 740; *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words,

appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

We review the *Strickland* standards "through the prism of an abuse of discretion standard" when analyzing a trial court's ruling on a motion for new trial based on ineffective assistance of counsel. *State v. Gill*, 967 S.W.2d 540, 542 (Tex. App.—Austin 1998, pet. ref'd); *see also Rodriguez v. State*, 329 S.W.3d 74, 81 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Charles v. State*, 146 S.W.3d 204, 207–08 (Tex. Crim. App. 2004), *superseded by rule on other grounds by* Tex. R. App. P. 21.8(b). We view evidence in the light most favorable to the trial court's ruling, and we will reverse only if no reasonable view of the record could support the trial court's finding. *Charles*, 146 S.W.3d at 208.

Gannaway's trial counsel stated at the hearing on the motion for new trial that his tactic in calling Higginbotham was to demonstrate that Gannaway was tired the day he was arrested: "[T]he intention was to prove that [] Gannaway was fatigued . . . [T]he intention was to show he was tired and had a reason to be tired. That was the intention."

During his opening statement, trial counsel told the jury that approximately one week prior to Gannaway's arrest, his fiancée had died and, as a result,

6

Gannaway had suffered several sleepless nights. And trial counsel did in fact ask Higginbotham about the length of day Gannaway had worked, the type of work he performed, and the limited number of employees working the day he was arrested; and he elicited testimony that the day was warmer than normal. This testimony was elicited despite the trial court's having put strict constraints on the timeframe about which trial counsel was allowed to question Higginbotham regarding Gannaway's conduct.

During closing argument, trial counsel attempted to defend Gannaway's having fallen asleep in the police vehicle by echoing Higginbotham's testimony: "You heard testimony about how long [] Gannaway was working that day. You heard about the conditions he was working under. . . . It's up to you to decide was that a person passed out from drinking too much, or is that a person that's just exhausted and fell asleep?"

Gannaway argues that his trial counsel was ineffective "in failing to present testimony from [] Higginbotham that would have tended to explain why [Gannaway fell] asleep in the police vehicle immediately after his arrest." We disagree with Gannaway's assertion and conclude that trial counsel did question Higginbotham about Gannaway's alleged fatigue. Furthermore, our review of trial counsel's conduct is not restricted to one isolated portion of the trial. Our review of the record reveals that in addition to calling Higginbotham to the stand to testify regarding Gannaway being fatigued, trial counsel also introduced evidence that Gannaway had medical reasons for failing the field-sobriety tests.

7

Specifically, trial counsel called a medical expert to explain that Gannaway had previously suffered a concussion and suffered from multiple medical conditions that would affect his nystagmus reaction and his ability to perform tests that involved standing on one foot or walking.

Viewing the evidence in the light most favorable to the trial court's ruling and looking at the totality of the representation and particular circumstances of this case, we conclude that Gannaway failed to establish that his trial counsel's performance fell below an objective standard of reasonableness; therefore, the first prong of *Strickland* is not satisfied. *See Thompson*, 9 S.W.3d at 812. Thus, the trial court acted within its discretion by denying Gannaway's motion for new trial predicated on ineffective assistance of counsel. We overrule Gannaway's first point.

**B.      The Prosecutor's Comment on Gannaway's Post-arrest Silence.**

In his second point, Gannaway contends that he also received ineffective assistance of counsel at trial because his defense attorney did not object when the State elicited testimony from Hayney, during the State's case-in-chief, regarding Gannaway's post-arrest silence. Specifically, Gannaway argues that the following colloquy between the prosecutor and Hayney constituted an inadmissible comment on Gannaway's right to remain silent:

> [Prosecutor]:      At any point before we see you again on the second tape in the other room, does [Gannaway] say, I'm sorry; I'm just so sleepy; I haven't slept in days?
>
> [Hayney]:          No.

> [Prosecutor]: Does he make any excuse for the fact he slept throughout the entire transport to jail?
>
> [Hayney]: No.

We conclude that on this record, Gannaway has not met his burden to show that counsel's assistance fell below an objective standard of reasonableness by not objecting to this colloquy.

The United States Supreme Court held in *Doyle v. Ohio* that the federal Due Process Clause prohibits the cross-examination of a defendant concerning his silence after he has been arrested and given *Miranda* warnings. 426 U.S. 610, 619, 96 S. Ct. 2240, 2245 (1976). This prohibition serves to prevent a jury from drawing inferences of guilt from a defendant's decision to remain silent after being told he has a right to remain silent. *See id.* at 619 n.11 The same consideration bars the prosecution from using evidence of such silence as part of its case-in-chief against the defendant. *Stroman v. State*, 69 S.W.3d 325, 331 (Tex. App.—Texarkana 2002, pet. ref'd).

A defendant's rights with regard to post-arrest silence are broader under our state constitution. Article I, section 10 protects a defendant from compelled self-incrimination from the moment an arrest is effectuated. *Sanchez v. State*, 707 S.W.2d 575, 579–80 (Tex. Crim. App. 1986); *see* Tex. Const. art. I, § 10. That provision protects a defendant's post-arrest silence regardless of whether he has been informed of his right to remain silent. *See Sanchez*, 707 S.W.2d at 582. As a result, the State may not refer to or admit in evidence the fact of a

9

defendant's silence if such silence occurs after the defendant has been arrested, notwithstanding the fact that he might not have been advised of his rights at that time. *See id.* at 579.

This case demonstrates the inadequacies that are inherent in evaluating ineffective assistance claims on direct appeal. Here, even though Gannaway filed a motion for new trial based on alleged ineffective assistance of counsel and the trial court held a hearing on that motion, Gannaway did not question trial counsel regarding the colloquy in dispute; thus, the record does not show why Gannaway's trial counsel did not object to Hayney's testimony regarding Gannaway not explaining to Hayney why he fell asleep in the police cruiser. Simply put, any possible trial strategy is not revealed.

Because the record is silent, we cannot determine whether trial counsel's inaction was grounded in sound trial strategy. *See Jackson*, 877 S.W.2d at 771. In the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003); *see also Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (presuming reasonable trial strategy supported failure to object in face of silent record). Gannaway takes the position that no possible plausible trial strategy can be imagined for counsel's not objecting to this testimony. We disagree.

We note that multiple courts have posited that counsel may choose not to object to testimony revealing a defendant's post-arrest silence to create the appearance that the defense is being open and completely honest with the jury. *See, e.g., Ahmadi v. State*, 864 S.W.2d 776, 783 (Tex. App.—Fort Worth 1993, pet. ref'd) (indicating that failure to object to prosecutor's use of post-arrest silence was sound trial strategy); *Stroman v. State*, 69 S.W.3d at 332 (noting that counsel's failure to object to police officer's testimony regarding defendant's post-arrest silence may have constituted trial strategy to appear open and honest with jury). A plan to appear open and honest with the jury constitutes reasonable strategy. *See Thomas v. State*, 886 S.W.2d 388, 392 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) ("[T]rial counsel's decision not to object to improper testimony can be a plausible trial strategy when counsel desires to create the appearance of being open and completely honest with regard to all questions.").

Because the record is silent regarding why trial counsel did not object and because a plausible trial strategy can be imagined, Gannaway fails to overcome the presumption that his trial counsel exercised reasonable professional judgment when he did not object to Hayney's testimony. *See Thompson*, 9 S.W.3d at 814. On this record, Gannaway has not met his burden to show that trial counsel's assistance fell below an objective standard of reasonableness. *See id.* We overrule Gannaway's second point.

## IV. Conclusion

Having overruled both of Gannaway's points, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 28, 2011

12