# NO. 12-11-00240-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *VICTORINO BETANCOURT,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Victorino Betancourt appeals his conviction for aggravated robbery. In four issues, Appellant argues that the evidence is insufficient, that fundamental error occurred during the trial, and that he was denied the effective assistance of counsel. We affirm.

### BACKGROUND

In the early morning hours of December 19, 2010, three men robbed a pizza delivery driver in Tyler, Texas. Two of the men wore black hooded shirts, and the third, the one who wielded a gun, wore a red hooded shirt. The driver was unable to describe the men in black, but was able to give a vague description of the man in red. The men got away with currency, pizzas, and soft drinks.

Several hours later, the police responded to a noise complaint in the vicinity of the robbery. At that location, the officers arrested two men for possession of marijuana. One man was wearing a black hooded shirt and the other was wearing a red hooded shirt. These men were not further investigated for possible involvement in the robbery.

Because the victim was unable to identify the men who robbed him, the police worked to

piece together a circumstantial chain of evidence and inferences that eventually connected Appellant to the robbery. The investigators began by working backwards from two telephone numbers from which calls were made about the pizza order that preceded the robbery. One number, ending in "9025," was used to make two telephone calls, one to place the order and one to check on the order. There was another call about the order made from a number ending in "2826." In the pizza company's computer, the "2826" number was associated with an address that is several blocks away from the scene of the robbery.

The police called the "9025" number. A person who identified herself as "Anna" said that the phone belonged to "Victor." She later said that her last name was Betancourt. This led the police to Appellant, who had lived at an address several blocks from where the robbery occurred. However, the woman was not Anna Betancourt. Her name is Hannah McCartney. During the investigation, she was arrested on unrelated charges, and the police interviewed her in jail. She told them that she got the SIM card for the "9025" phone number from Appellant and that she destroyed it after the police called her. Vianca Garcia told the police that she bought a prepaid cellphone with the "2826" number and loaned it to Appellant prior to the robbery. She also told the police that Appellant admitted to committing the robbery.

After the police identified Appellant as a suspect, they presented the delivery driver with a photo lineup that included Appellant. He said that he was "about 75% sure" that one individual, not Appellant, was involved; and he identified Appellant with a "50% sure" level of confidence.

A Smith County grand jury indicted Appellant for the felony offense of aggravated robbery. Appellant pleaded not guilty at his trial. The pizza delivery driver saw Appellant on the first day of trial. He told the district attorney's investigator that he had gone to high school with Appellant and that he would have recognized Appellant as the robber if it had been him. The State persisted with the prosecution. The delivery driver was able to testify at trial only that he could not "swear that [Appellant] wasn't the person" who robbed him but that he believed he would have recognized him. The State also had difficulty with Vianca Garcia. Despite saying, prior to trial, that Appellant had borrowed her phone and told her he committed the robbery, and writing the same on a page with his photograph on it, Garcia testified at trial that she had felt pressured to make that statement. She said she felt pressured because the police had come to her place of employment four times and told her that if "she didn't say anything, they were going to

throw [her] in jail." She said that the assistant district attorney also had come with another investigator to her workplace and that she was scared of him. She testified that Appellant did not tell her that he had committed the robbery.

At the conclusion of the trial, the jury found Appellant guilty as charged and assessed a sentence of imprisonment for forty years. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant argues that the evidence is legally insufficient to support the verdict. Specifically, Appellant asserts that no rational juror, especially in light of the pizza delivery driver's testimony, could conclude that he committed the robbery.

### Applicable Law and Standard of Review

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) (plurality opinion). Evidence is not legally sufficient if, when viewing the evidence in a light most favorable to the verdict, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007). Under this standard, a reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *See Brooks*, 323 S.W.3d at 899; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, a reviewing court defers to the fact finder's resolution of conflicting evidence unless that resolution is not rational in light of the burden of proof. *See Brooks*, 323 S.W.3d at 899–900. The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the

3

State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

As charged in the indictment, the State's evidence had to show that Appellant, in the course of committing a theft and with intent to obtain to maintain control of property, intentionally or knowingly threatened or placed another in fear of imminent bodily injury or death and used or exhibited a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 29.02, 29.03 (West 2011).

**Analysis**

With respect to the sufficiency of the evidence, the parties agree that the evidence shows an aggravated robbery was committed and disagree only on whether the evidence is sufficient for a rational juror to conclude that Appellant participated in the robbery.

Appellant argues that the jury's verdict is "utterly irrational in light of the evidence presented by the State." Appellant is correct that the State's case did not include the kind of evidence that is usually presented in an aggravated robbery case. For example, not only could the complaining witness not identify Appellant as the robber, but the best he could do in terms of linking Appellant to the offense was to say that he could not state under oath that Appellant was not the person who robbed him.

The State argues that Appellant is connected to the robbery because of the telephone numbers he controlled. But this is evidence that the jury could scarcely have credited. The 9025 number was linked to Appellant because a person who answered that number said the phone belonged to "Victor" and identified herself with a fake name that included the surname Betancourt. Subsequently, that person, along with another, told the investigator that the 9025 number belonged to Appellant.

Vianca Garcia testified that she had obtained the 2826 number but that she gave it to Appellant. She also testified that Appellant regularly called her from the 9025 number. The ownership or control of these numbers is helpful to understand the police investigation, but it is not particularly useful in determining whether Appellant is responsible for the robbery. The theory is that the person who placed the order from the 9025 number and the person who checked on the order from the 2826 number made the calls to set the delivery driver up for the robbery and that the same person did the robbery. In light of the burden of proof, it is unlikely that a rational jury would conclude that Appellant committed the robbery simply because he controlled the telephone

4

numbers that were related to the pizza order.

The jury likely did rely upon Vianca Garcia's statement that Appellant admitted to committing the robbery. Garcia told an investigator that Appellant admitted committing the robbery. Next to Appellant's photograph, she wrote, "That's the person I let borrow the phone and he was the one that told me about the pizza robbery. He said he did the robbery." She testified that her out of court statement was false. But hearsay statements admitted without objection[1] have probative value, and it was for the jury to determine which version of her statements to credit. *See* TEX. R. EVID. 802; ***Poindexter v. State***, 153 S.W.3d 402, 406-07 (Tex. Crim. App. 2005); ***Fernandez v. State***, 805 S.W.2d 451, 455 (Tex. Crim. App. 1991). Appellant offers several suggestions as to why Garcia's testimony may be unreliable. Specifically, he urges that her story about the number being transferred to Appellant is implausible, and she could have been implicating Appellant to shield either the father of her child or another relative who could have committed the robbery.

These arguments are a request that we reweigh the evidence and evaluate the credibility of a witness who testified in this trial. The task of determining the credibility of witnesses is left to the jury, and we will not reweigh the evidence. A rational jury could believe Garcia's statement that Appellant had implicated himself in the robbery was true and, accordingly, in light of the other evidence, could conclude that Appellant committed the robbery. We overrule Appellant's first issue.

## PRESERVATION FOR APPELLATE REVIEW

In his second and third issues, Appellant raises issues that were not preserved for appellate review by contemporaneous objection. He argues that we should evaluate those errors as fundamental error.

### Appellant's Complaints

In his second issue, Appellant argues that admission of out of court statements by Hannah

---

[1] Appellant's counsel objected to the written document but did not object to her oral statements. None of the statements were offered pursuant to an exception to the hearsay rule. Appellant objected to the written document on the grounds that it was "not contrary to the testimony she's already given." It was, however, contrary to the testimony she had given. She testified that Appellant did not confess, but she wrote that he did. The objection was overruled. Counsel did not otherwise argue that her out of court statements were not admissible and did not argue that they were inadmissible as substantive evidence.

McCartney and Carl Gray violated his Fifth Amendment right to confront his accusers. McCartney and Gray told a police investigator that the 9025 cell phone belonged to Appellant. Neither witness appeared at trial and Appellant's counsel did not object to the admission of their out of court statements.

In his third issue, Appellant argues that Officer Gardner impermissibly commented on his postarrest silence by telling the jury that he refused to discuss the robbery because his attorney had told him not to discuss the case with the police. Appellant did not object to Gardner's testimony.

## Preservation of Complaints for Appellate Review

As Appellant concedes, it is necessary to preserve a complaint about a trial by way of a contemporaneous objection. *See* TEX. R. APP. P. 33.1(a)(1); *Layton v. State*, 280 S.W.3d 235, 239 (Tex. Crim. App. 2009). No specific language is necessary to preserve a complaint for appellate review. All a party must do to preserve a complaint is to "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Layton*, 280 S.W.3d at 239 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

The court of criminal appeals has held that complaints pertaining to the Confrontation Clause of the Fifth Amendment and comments on postarrest silence must be preserved by contemporaneous objection. *See Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010) (Confrontation Clause claims are subject to preservation requirement); *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (complaint about comment on postarrest silence must be preserved by contemporaneous objection).

Nevertheless, Appellant asserts that this court should review these issues as fundamental error. Fundamental error is a violation of a systemic or absolute legal requirement of a trial. *See Mendez v. State*, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004) (citing *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993)). Unlike ordinary rights, or even constitutional rights that can be forfeited by inaction, some rights are widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system. *See Marin v. State*, 851 S.W.2d at 278, *overruled on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997). These rights cannot be forfeited by mere inaction but must be expressly relinquished if a defendant so wishes. *Id*.

6

The rights implicated here, the right to remain silent and the Fifth Amendment right to confront accusers, have not been held, in the context presented here, to be rights that can only be forfeited by express relinquishment. *See Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986) (rejecting claim that comment on failure to testify was fundamental error that did not require contemporaneous objection to preserve for appellate review); *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004) (Confrontation Clause complaint required contemporaneous objection); *Holland v. State*, 802 S.W.2d 696, 700 (Tex. Crim. App. 1991) ("It would thus appear that appellant waived any claim that admission of the out-of-court statement of the child in this cause violated his right to confrontation."). Because the complained of issues require a contemporaneous objection as a prerequisite to consideration on appeal, we overrule Appellant's second and third issues.

## EFFECTIVE ASSISTANCE OF COUNSEL

In his fourth issue, Appellant asserts that he did not receive the effective assistance of counsel. Specifically, he asserts that trial counsel should have objected to Officer Gardner's testimony relating the out of court statements made by absent witnesses and his comment on Appellant's postarrest silence.

## Applicable Law

Claims of ineffective assistance of counsel are evaluated under the two step analysis articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674 (1984). The first step requires an appellant to demonstrate that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065; *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Counsel's representation is not reviewed for isolated or incidental deviations from professional norms, but on the basis of the totality of the representation. *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069.

The second step requires the appellant to show prejudice from the deficient performance of his attorney. *See Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). To establish prejudice, an appellant must show that there is a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance. *See*

7

*Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

We begin with the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). An appellant has the burden of proving ineffective assistance of counsel and must overcome the presumption that "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (internal quotations omitted).

Appellant cannot meet this burden if the record does not affirmatively support the claim. *See Garza v. State*, 213 S.W.3d 338, 347-48 (Tex. Crim. App. 2007) (court presumed trial counsel had reasonable trial strategy in absence of the record indicating reasons for a trial counsel's actions or intentions,); *Jackson v. State*, 973 S.W.2d 954, 955 (Tex. Crim. App. 1998) (inadequate record on direct appeal to evaluate whether trial counsel provided ineffective assistance). Generally, a record that specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an ineffectiveness claim. *See Kemp v. State*, 892 S.W.2d 112, 115 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd). And, before being condemned as "unprofessional and incompetent," defense counsel should "ordinarily [be given] an opportunity to explain her actions." *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

**Analysis**

Appellant argues that this case represents an exception to the general rule that the reasons for counsel's action, or inaction, must be shown to obtain relief. Appellant asserts that because the errors were so plain and because no conceivable strategy existed for not raising objections, we can conclude that the decision not to object was not strategic but evidence of incompetence. We disagree.

As the court of criminal appeals has noted, and Appellant acknowledges, "[t]he reasonableness of counsel's choices often involves facts that do not appear in the appellate record." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). And, as a reviewing court, in the absence of evidence to the contrary, we will ordinarily "assume a strategic motivation [for the challenged conduct] if any can possibly be imagined." *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

In this case, and in the absence of evidence to the contrary, a strategic motivation for counsel's actions can be readily summoned. The statements of Hannah McCartney and Carl Gray

were not very damaging to Appellant because they were essentially duplicative of Vianca Garcia's testimony that the "9025" number belonged to him. However, counsel could have reasonably concluded that insisting that McCartney and Gray be produced was not in Appellant's best interest. As it stood at trial, McCartney lied to the police about her identity. She answered the "9025" number when it was called, and she (or her boyfriend) destroyed the SIM card after the police began investigating. Conveniently, she told the police that Appellant had given the phone to her ex-boyfriend and that she had obtained the phone from him by trading drugs for it.

Assuming the testimony regarding the statements of McCartney and Gray was inadmissible, an objection would have either prompted the State to locate and produce McCartney and Gray or not to introduce their statements. The statements helped Appellant. It is true that they stated that the phone came from Appellant, but McCartney answered the phone and behaved in a suspicious manner thereafter. In fact, when asked by the State if he "suspected that [Hannah and her boyfriend] could be among the three robbers," the detective said that "[t]hey could be. There's just nothing that linked them to it." Had they been located, McCartney and Gray might have been able to explain the fact that McCartney answered the phone in a manner that was less incriminating than it appeared at trial. It is advantageous, from a defense perspective, for there to be suspects the State cannot locate who link themselves to a telephone number connected to a robbery and who behave in a suspicious fashion.[2] The other alternative, had the State not been able to locate the witnesses, would have been for their statement to not be heard by the jury. Counsel could have reasonably concluded that this course of events would not have advanced Appellant's cause. Accordingly, counsel could have reasonably determined that it was better to allow the statements to be admitted without the witnesses.

With respect to the statement that Appellant told the officer he was going to follow his attorney's advice not to make a statement, the State does not dispute that it was improper. We agree with the State, however, that once the issue of Appellant's failure to answer questions was interjected into the trial, counsel's decision not to object was one of several reasonable courses of action. There was but one mention of Appellant's declining to answer questions, the reference

---

[2] Of course, it would have been better had McCartney's ex-boyfriend testified that he had placed the pizza order and that Appellant was not involved in the robbery. Counsel could have reasonably concluded that a hearsay objection would not have caused this to occur.

9

was vague and unpointed, and the prosecutor did not return to the subject. Accordingly, trial counsel could have reasonably concluded that objecting and highlighting the error was not a reasonable course of action. *See*, *e.g.*, **Stroman v. State**, 69 S.W.3d 325, 332 (Tex. App.–Texarkana 2002, pet. ref'd) (counsel's failure to object to testimony about postarrest silence may have constituted trial strategy); **Ahmadi v. State**, 864 S.W.2d 776, 783 (Tex. App.–Fort Worth 1993, pet. ref'd) (same), *but cf.* **Hall v. State**, 161 S.W.3d 142, 156 (Tex. App.–Texarkana 2005, pet ref'd) (relief granted on ineffective assistance claim when counsel, in addition to other errors, did not object to evidence of postarrest silence as well as comments during opening and closing statements). We overrule Appellant's fourth issue.

## DISPOSITION

Having overruled Appellant's four issues, we *affirm* the judgment of the trial court.

**SAM GRIFFITH**
Justice

Opinion delivered January 31, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

10



# COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
# JUDGMENT

## JANUARY 31, 2013

## NO. 12-11-00240-CR

**VICTORINO BETANCOURT,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 114th Judicial District Court
of Smith County, Texas. (Tr.Ct.No. 114-0337-11)

---

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

11